J-A35011-14

2015 PA Super 64

| | |
|---|---|
| DANIEL E. TAYLOR AND WILLIAM TAYLOR, AS CO-EXECUTORS OF THE ESTATE OF ANNA MARIE TAYLOR, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| EXTENDICARE HEALTH FACILITIES, INC. D/B/A HAVENCREST NURSING CENTER; EXTENDICARE HOLDINGS, INC; EXTENDICARE HEALTH FACILITY HOLDINGS, INC., EXTENDICARE HEALTH SERVICES, INC., EXTENDICARE REIT; EXTENDICARE, L.P.; EXTENDICARE, INC., MON-VALE NON ACUTE CARE SERVICE, INC. D/B/A THE RESIDENCE AT HILLTOP; MON-VALE HEALTH RESOURCES, INC; JEFFERSON HEALTH SERVICES, D/B/A JEFFERSON REGIONAL MEDICAL CENTER, | |
| APPEAL OF: EXTENDICARE HEALTH FACILITIES, INC., D/B/A HAVENCREST NURSING CENTER, EXTENDICARE HOLDINGS, INC., EXTENDICARE HEALTH FACILITY HOLDINGS, INC., EXTENDICARE HEALTH SERVICES, INC., EXTENDICARE REIT, EXTENDICARE, L.P. AND EXTENDICARE, INC., | |
| Appellants | No. 2028 WDA 2013 |

Appeal from the Order Entered November 20, 2013
In the Court of Common Pleas of Washington County
Civil Division at No(s): No. 2012-6878

BEFORE:  BENDER, P.J.E., BOWES, and ALLEN, JJ.

OPINION BY BOWES, J.:                              **FILED APRIL 2, 2015**

Extendicare Health Facilities, Inc., d/b/a Havencrest Nursing Center, together with the other Extendicare entities (collectively "Extendicare"), appeals from the November 20, 2013 order overruling preliminary objections in the nature of a motion to compel arbitration of Co-Executors' wrongful death and survival claims.[1]  After thorough review, we affirm.

The underlying case involves negligence claims against Extendicare, Mon-Vale Non-Acute Care Service, Inc. d/b/a The Residence at Hilltop ("The Residence"), and Jefferson Health Services d/b/a Jefferson Regional Medical Center ("Jefferson Medical Center"), for injuries culminating in the April 3, 2012 death of Co-Executors' decedent, Anna Marie Taylor ("Decedent"). According to the complaint, on June 30, 2011, while the Decedent resided at The Residence, she became unresponsive and required a brief hospitalization.  One month later, she was treated for dehydration.  On February 1, 2012, she fell at The Residence, fractured her right hip, and underwent surgery to repair the fracture at Jefferson Medical Center.  During that hospitalization, the Decedent was noted to have a skin tear and redness on her coccyx, but no pressure ulcer.

_____

[1]  In **Midomo Co. v. Presbyterian Hous. Dev. Co.**, 739 A.2d 180, 183 (Pa.Super. 1999), this Court noted that Pa.R.A.P. 311(a)(8) permits an interlocutory appeal from any order that is made appealable by statute.  The Uniform Arbitration Act, 42 Pa.C.S.. §§ 7301 et seq., provides that an appeal may be taken from "[a] court order denying an application to compel arbitration. . . ." 42 Pa.C.S. § 7320(a)(1).

Upon her release from Jefferson Medical Center on February 9, 2012, the Decedent was admitted to the Extendicare skilled nursing facility known as Havencrest Nursing Center. A skin assessment upon admission noted three pressure ulcers. Within a week, the Decedent gained approximately fifteen pounds, and a subsequent chest x-ray revealed cardiac issues. Her pressure ulcer on her coccyx had increased in size and the drainage was purulent. By March, the wound was a Stage IV and the Decedent was noted to have pitting edema in her lower extremities. The Decedent was admitted to the Monongahela Valley Hospital on March 9, 2012, treated, and discharged to home with continuing wound care. She was subsequently transferred to the Cedars of Monroeville for hospice care, where she died.

On October 15, 2012, Co-Executors filed a *praecipe* for writ of summons against Extendicare, Jefferson Medical Center, and The Residence, and subsequently, a complaint asserting wrongful death and survival claims. Co-Executors alleged therein that the combined negligence of the Defendants caused or contributed to the injuries and death of Decedent. Extendicare filed preliminary objections to the complaint averring that the claims against it should be submitted to binding arbitration governed by the Pennsylvania Uniform Arbitration Act, 42 Pa.C.S. § 7301 *et seq.*, as provided in an arbitration agreement executed on Decedent's behalf by William Taylor pursuant to a power of attorney. The trial court overruled the preliminary objections, and relied upon ***Pisano v. Extendicare Homes, Inc.***, 77 A.3d

651 (Pa.Super. 2013), for the proposition that the arbitration agreement did not bind the wrongful death beneficiaries. The court also refused to sever the survival action against Extendicare and send it to arbitration, finding that Pa.R.C.P. 213(e) required consolidation of wrongful death and survival actions for trial and that severance would not advance the stated purpose of the Federal Arbitration Act, "that being to ease the burden of litigation on the parties and this Court's docket." Trial Court Opinion, 1/29/14, at 3-4.

Extendicare timely appealed to this Court,[2] and presents two issues for our review:

> I.    Did the Trial Court commit an error of law by refusing to submit Appellees' Survival Claim to arbitration where the Federal Arbitration Act, requiring that all arbitrable claims be arbitrated, is controlling?
>
> II.   Did the Trial Court commit an error of law by refusing to submit Appellees' Wrongful Death Claim to arbitration where, under Pennsylvania law, a wrongful death plaintiff's right of action is derivative of, and therefore dependent upon, the decedent's rights immediately preceding death?

Appellants' brief at 4. We will address the issues in reverse order, as our disposition of the second issue affects our analysis of the first issue.

We review a claim that the trial court improperly overruled a preliminary objection in the nature of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are

---

[2] Neither Jefferson Medical Center nor The Residence is participating in the within appeal.

supported by substantial evidence. ***Pittsburgh Logistics Systems, Inc. v. Professional Transportation and Logistics, Inc.***, 803 A.2d 776, 779 (Pa.Super. 2002). In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second factor we examine is whether the dispute is within the scope of the agreement. ***Pisano***, ***supra*** at 654; ***see also Elwyn v. DeLuca***, 48 A.3d 457, 461 (Pa.Super. 2012) (quoting ***Smay v. E.R. Stuebner, Inc.***, 864 A.2d 1266, 1270 (Pa.Super. 2004)).

Extendicare contends that the wrongful death action is derivative of a tort committed during the lifetime of the decedent, and that it is necessarily dependent upon the rights that the decedent possessed immediately prior to death. It follows then, according to Extendicare, that since the Decedent agreed to arbitrate any disputes, the Decedent's beneficiaries are limited to claims that Decedent could have pursued during her lifetime and that all claims must be submitted to arbitration.

This precise contention was addressed and rejected by this Court in ***Pisano***, ***supra***, and it is controlling herein. We held in ***Pisano*** that a wrongful death action is a separate action belonging to the beneficiaries. While it is derivative of the same tortious act, it is not derivative of the decedent's rights. ***Id***. Thus, an arbitration agreement signed by the decedent or his or her authorized representative is not binding upon non-

signatory wrongful death beneficiaries, and they cannot be compelled to litigate their claims in arbitration.

We turn now to Extendicare's remaining issue: that the trial court erred in refusing to compel arbitration of the survival action. The gist of Extendicare's claim is that, even if the arbitration agreement is not binding upon the wrongful death beneficiaries, it must be enforced against Co-Executors who stand in the shoes of the Decedent for purposes of the survival action. It insists that the trial court should have bifurcated the wrongful death and survival actions and compelled arbitration of the latter.[3]

Co-Executors respond that Pa.R.C.P. 213(e) and this Court's decision in **Pisano** require the consolidation of wrongful death and survival actions, and since the wrongful death beneficiaries cannot be compelled to arbitrate the wrongful death actions, both actions must remain in court. Pa.R.C.P. 213 provides in relevant part:

_____

[3] We note at the outset that Extendicare fails to specify whether the trial court's alleged error consisted of its failure to compel arbitration of the entire survival action, which involves claims of joint liability for negligence against The Residence and Jefferson Medical Center, or just the survival action against Extendicare. Since these other entities did not agree to arbitrate, they cannot be compelled to proceed in arbitration on the survival claim. Hence, the survival claims against The Residence and Jefferson Medical Center, the alleged joint tortfeasors, would remain in court. The splitting of the survival claim between two forums would result either in empty chairs at the arbitration, where an arbitrator would allocate responsibility for negligence among the Defendants, or these parties would be pressured to participate in arbitration to protect their rights. Either scenario subverts the policies favoring arbitration.

> (e) A cause of action for the wrongful death of a decedent and a cause of action for the injuries of the decedent which survives his or her death may be enforced in one action, but if independent actions are commenced they shall be consolidated for trial.

Pa.R.C.P. 213(e). Extendicare counters that the severance issue was not addressed in *Pisano*.

Although the trial court in *Pisano* retained jurisdiction over both the wrongful death and survival actions pursuant to Pa.R.C.P. 213(e), Extendicare is correct that this Court did not rule on the propriety of severance in *Pisano*. The parties simply acquiesced in the trial court's application of Rule 213 by failing to challenge it on appeal. Thus, the issue of whether wrongful death and survival actions must be bifurcated to permit arbitration of the survival action is a question of first impression for the appellate courts of this Commonwealth.

In support of its position that bifurcation is required, Extendicare first argues that the consolidation provision of Pa.R.C.P. 213(e) is inapplicable on the facts herein. It maintains that the issue is jurisdictional and that Pa.R.C.P. 213(e) only speaks to the consolidation of wrongful death and survival actions that are properly pending in court. Furthermore, Extendicare argues that consolidation under that rule is permissive and discretionary. It adds that by construing Pa.R.C.P. 213 as mandating consolidation, one runs afoul of Pa.R.C.P. 128, which provides that in ascertaining the Supreme Court's intent in promulgating a rule, "no rule

shall be construed to confer a right to trial by jury where such right does not otherwise exist." Pa.R.C.P. 128(f).

Co-Executors counter that Pa.R.C.P. 213(e) is applicable as arbitration agreements do not divest a court of jurisdiction over the dispute, as demonstrated by the fact that when a matter is referred to arbitration, the trial action is stayed, not dismissed. *See Schantz v. Dodgeland*, 830 A.2d 1265, 1266-67 (Pa.Super. 2003); *see also* 42 Pa.C.S. § 7304(d) ("An action or proceeding, allegedly involving an issue subject to arbitration, shall be stayed if a court order to proceed with arbitration has been made or an application for such an order has been made under this section."). They also direct our attention to the fact that the trial court in *Pisano* retained jurisdiction over both the wrongful death and survival actions pursuant to Pa.R.C.P. 213(e), and maintain that a court has jurisdiction if it is competent to hear or determine controversies of the general nature of the matter involved. *See Aronson v. Sprint Spectrum, L.P.*, 767 A.2d 564, 568 (Pa.Super. 2001).

We agree with Co-Executors that jurisdiction does not preclude consolidation of these actions. Nor does Pa.R.C.P. 213(e) provide the only support for consolidating the wrongful death and survival actions.[4] In the

_____

[4] Pa.R.C.P. 1020(d)(1) is also implicated herein. It provides for the mandatory joinder in separate counts of all causes of action against the same person arising from the same transaction or occurrence to avoid

*(Footnote Continued Next Page)*

wrongful death statute, 42 Pa.C.S. § 8301(a), the legislature acknowledged the overlap in the wrongful death and survival actions and the potential for duplicate recovery, and mandated consolidation of the actions:

> (a)    General rule.--An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime **and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.**

42 Pa.C.S. § 8301(a) (emphasis added).  We find both the rule and the statute applicable.

Extendicare counters that the Federal Arbitration Act ("FAA"), which is "intended to foreclose state legislative attempts to undercut the enforceability of arbitrations agreements," pre-empts state statutes and rules that conflict with that policy, including Pa.R.C.P. 213(e).  ***Southland Corp. v. Keating***, 465 U.S. 1, 16 (1984); ***see Marmet Health Care Ctr., Inc. v. Brown***, 132 S.Ct. 1201 (2012).  It cites ***Moscatiello v. J.B.B. Hilliard***, 939 A.2d 325 (Pa. 2007), for the proposition that the FAA pre-empts state procedural rules that stand in the way of the FAA's function, and

_(Footnote Continued)_ ───────────────────

waiver.  The basis for both Rule 213 and Rule 1020 "is the avoidance of multiple trials and proceedings involving common facts or issues or arising from the same transaction or occurrence.  The avoidance of duplication of effort is a benefit to both the parties and the courts."  1990 Explanatory Comments to Pa.R.C.P. 213.

argues that to the extent Rule 213(e) compels that these causes of action be consolidated for disposition in court, it is pre-empted.[5]

In support of preemption herein, Extendicare relies upon **Marmet Health Care Ctr., Inc. v. Brown**, 132 S.Ct. 1201 (2012), in which the United States Supreme Court held that the FAA pre-empted West Virginia's policy precluding enforcement of pre-dispute arbitration clauses in nursing home cases involving personal injury or death. The Supreme Court granted *certiorari* after West Virginia's highest court ruled in **Brown v. Genesis Healthcare Corp.**, No. 35494, 228 W. Va. 646, 724 S.E.2d 250, 2011 W. Va. LEXIS 61 (W.Va. 2011), a decision involving three cases, "that as a matter of public policy under West Virginia law, an arbitration clause in a nursing home admission agreement adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, shall not be enforced to compel arbitration of a dispute concerning the negligence." The Supreme Court applied **AT&T Mobility LLC v. Concepcion**, 131 S. Ct. 1740, 1747 (2011), in which it opined that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." **Marmet**,

_____

[5] The Pennsylvania Supreme Court held in **Moscatiello v. Hilliard**, 939 A.2d 325, 326, (Pa. 2007), that Pennsylvania's thirty-day time limit for challenging arbitration awards was not pre-empted by the three-month FAA time limit in 9 U.S.C. § 12, as it did not undermine the goal of the latter statute.

*supra* at 1204. The **Marmet** Court noted that, "West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA." **Id**. The Court remanded two of the cases for a determination as to whether the arbitration clauses were "unenforceable under state common law principles that are not specific to arbitration and pre-empted by the FAA." **Id**.

Co-Executors counter that the FAA does not pre-empt Pa.R.C.P. 213(e), as the rule was not intended to and does not operate as a blanket prohibition of arbitration in nursing home cases involving personal injury or wrongful death, which was at issue in **Marmet**.[6] Furthermore, the rule does not prohibit the arbitration of wrongful death cases. Moreover, the rule applies in all wrongful death and survival actions regardless of whether an arbitration agreement is present. Thus, Co-Executors contend, the rule is not intended to undermine the enforceability of arbitration agreements in particular. Appellees' brief at 30. We agree with Co-Executors on both counts.

_____

[6] Co-Executors also argued that Extendicare waived the preemption argument. We decline to find waiver as the trial court interrupted counsel for Extendicare before he could advance that argument. The issue was articulated in Extendicare's Pa.R.A.P. 1925(b) statement.

Preemption stems from the Supremacy Clause of the United States Constitution, Article VI, cl. 2, which provides that federal law is paramount, and that laws in conflict with federal law are without effect. *Altria Group, Inc. v. Good*, 555 U.S. 70 (2008). There are several types of preemption, one being express preemption, where the federal law contains a provision announcing its intention to supplant state law. There is also field preemption, where the federal statute "reflect[s] a Congressional intent to occupy the entire field" of law. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 477 (1989). The Federal Arbitration Act does not contain an express preemption provision and Congress did not intend to occupy the field of arbitration. *Id*.

However, as this Court noted in *Trombetta v. Raymond James Fin. Servs.*, 907 A.2d 550, 564 (Pa.Super. 2006), "[e]ven when Congress has not completely displaced state regulation in an area, . . . state law may nonetheless be pre-empted to the extent that it conflicts with federal law; that is, to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Trombetta*, 907 A.2d at 564 (quoting *Volt*, 489 U.S. at 477). This concept is known as conflict preemption, and may arise in two contexts. First, a conflict occurs when compliance with both state and federal law is an impossibility. *Holt's Cigar Co. v. City of Philadelphia*, 10 A.3d 902, 918, (Pa. 2011). Second, conflict preemption may be found when state law "stands as an obstacle to

the accomplishments and execution of the full purposes and objectives of Congress." *Id*.; *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 31 (1996). It is this type of conflict preemption that Extendicare contends is applicable herein.

Pennsylvania applies a presumption against federal preemption of state law. *Dooner v. DiDonato*, 971 A.2d 1187 (Pa. 2009) (citing *Altria Group, Inc.*, *supra* at 77) (When addressing questions of express or implied preemption, we begin our analysis "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."). This presumption flows from the existence of "dual jurisdiction" and arises "from reasons of comity and mutual respect between the two judicial systems that form the framework" of our federalist system. *Kiak v. Crown Equipment Corp.*, 989 A.2d 385, 390 (Pa.Super. 2010).

With these principles in mind, we turn to the federal law that Extendicare contends pre-empts state law herein, the FAA. The FAA was promulgated because the judiciary was reluctant to enforce arbitration agreements, and the act was intended to place arbitration agreements on the same footing as other contracts. *Volt*, *supra*. The Supreme Court reiterated in *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219 (1985), that "the overriding goal of the Arbitration Act was [not] to promote the expeditious resolution of claims," but to "ensure judicial enforcement of

privately made agreements to arbitrate." Although the **Dean Witter** Court downplayed the notion that a desire for efficiency motivated the passage of the FAA, the House Report on the FAA, quoted therein, suggests that efficiency, both temporal and financial, played a role in the passage of the FAA. The Report stated, "It is practically appropriate that the action should be taken at this time when there is so much agitation against the costliness and delays of litigation. These matters can be largely eliminated by agreements for arbitration, if arbitration agreements are made valid and enforceable." H.R. Rep. No. 96, 68th Cong., 1st Sess., 2 (1924).

Consistent with the goal of ensuring that arbitration agreements are enforced, however, the FAA does not require parties to arbitrate absent an agreement to do so. **See Prima Paint Corp. v. Conklin Mfg. Co.**, 388 U.S. 395, 404 n.12 (construing the Act as designed "to make arbitration agreements as enforceable as other contracts, but not more so"). Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the FAA. **Gaffer Ins. Co. v. Discover Reinsurance Co.**, 936 A.2d 1109, 1113 (Pa.Super. 2007). However, as this Court stated in **Pisano**, "compelling arbitration upon individuals who did not waive their right to a jury trial" infringes upon a constitutional right conferred in Pa. Const. art. 1, § 6 ("Trial by jury shall be as heretofore, and the right thereof remain inviolate."). **See Bruckshaw v. Frankford Hospital of City of Philadelphia**, 58 A.3d 102,

108-109 (Pa. 2012) (recognizing constitutional right to jury trial in both civil and criminal cases). We added in *Pisano* that denying wrongful death beneficiaries their right to a jury trial "would amount to this Court placing contract law above that of both the United States and Pennsylvania Constitutions." *Pisano*, *supra* at 660-61.

Extendicare maintains that the survival claim against it must be severed and enforced in arbitration, and that state law to the contrary is pre-empted. We disagree. Neither Pa.R.C.P. 213 nor 42 Pa.C.S. § 8301 prohibits the arbitration of wrongful death and survival claims. Thus, the instant case does not mirror the categorical prohibition of arbitration of wrongful death and survival actions that the *Marmet* Court viewed as a clear conflict between federal and state law. *See also e.g.*, *Preston v. Ferrer*, 552 U.S. 346, 356 (2008) (FAA pre-empts state law granting state commissioner exclusive jurisdiction to decide issue the parties agreed to arbitrate); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56, (1995) (FAA pre-empts state law requiring judicial resolution of claims involving punitive damages); *Perry v. Thomas*, 482 U.S. 483, 491 (1987) (FAA pre-empts state-law requirement that litigants be provided a judicial forum for wage disputes); *Southland Corp.*, *supra* (FAA pre-empts state financial investment statute's prohibition of arbitration of claims brought under that statute).

The rule and statute are neutral regarding arbitration generally, and the arbitration of wrongful death and survival actions specifically. They are not anti-arbitration as was the statute in *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) (Alabama statute making written, predispute arbitration agreements invalid and unenforceable), nor do they invalidate arbitration agreements under state law contract principles applicable only to arbitration. *See Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (Montana statute that rendered arbitration agreements unenforceable unless they contained bold notice conflicted with the FAA because such a notice requirement was not applicable to contracts generally).

The statute focuses on the consolidation of wrongful death and survival claims as a means to avoid inconsistent verdicts and duplicative damages in overlapping claims. Rule 213 details how and where such claims will be consolidated. There is nothing in either the statute or rule that precludes wrongful death and survival actions from proceeding together in arbitration when all of the parties, including the wrongful death beneficiaries, agree to arbitrate. In the situation where the decedent or his representative has entered an enforceable agreement to arbitrate, and the wrongful death action is one brought by the personal representative pursuant to 42 Pa.C.S. § 8301(d) for the benefit of the decedent's estate, there would not appear to be any impediment to the consolidation of the actions in arbitration. The

statute and rule are evenhanded and designed to promote judicial efficiency and avoid conflicting rulings on common issues of law and fact.

In the instant case, the Arbitration Agreement contains a choice of law provision. It expressly provides that Pennsylvania's Uniform Arbitration Act, 42 Pa.C.S. § 7301, *et seq*., applies, and Extendicare acknowledges that Pennsylvania law governs. **See** Brief in Support of Defendants' Preliminary Objections to Plaintiffs' Complaint Raising Issues of Fact, at 5. The instant lawsuit consists of both survival and wrongful death claims, and there is no agreement to arbitrate the wrongful death claims. Additionally, there is no agreement to arbitrate survival claims involving The Residence or Jefferson Medical Center. The only claim that is subject to arbitration is Co-Executors' survival act claim against Extendicare, one of three alleged joint tortfeasors whose combined negligence allegedly caused Decedent's death.

Pennsylvania's wrongful death statute requires that wrongful death and survival actions be consolidated, as does Pa.R.C.P. 213(e). We are unaware of any United States Supreme Court decisions pre-empting state law regarding consolidation of claims where the law does not require that consolidation take place in a judicial forum. Admittedly, the United States Supreme Court has sanctioned piecemeal litigation in order to effectuate enforcement of arbitration agreements. **See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.**, 460 U.S. 1, 20 (1983); **see also Dean Witter Reynolds Inc. v. Byrd**, 470 U.S. 213, 221 (1985) (recognizing conflict

between two goals of FAA: enforcing private agreements and encouraging efficient and speedy dispute resolution, and rejecting that the latter goal trumps and ordering arbitrable pendant claims to arbitration). However, the piecemeal disposition Extendicare seeks herein does not involve discrete issues that can be litigated incrementally, but wholly redundant proceedings with a potential for inconsistent verdicts and duplicative damages.

The appellate courts of this Commonwealth have addressed litigation involving multiple parties and identical claims, and an agreement to arbitrate some of the claims. In **Thermal C/M Servs. v. Penn Maid Dairy Prods.**, 831 A.2d 1189 (Pa.Super. 2003), there were multiple actions pending in the same county that involved common questions of law and fact arising from the same construction contract and the same occurrence. Penn Maid was among the plaintiffs in an action filed against Thermal, and Thermal was a named defendant in both that court action and an arbitration proceeding involving the same issue. The contractor's motion to compel an owner to join arbitration proceedings brought by subcontractors was denied by the trial court and affirmed on appeal. We recognized that "litigating the two actions at the same time would be a waste of judicial resources, and it would promote a race to judgment[,]" and concluded it was "more efficient to address the issue in a single disposition rather than have parallel actions in independent forums with potentially different results." **Id**. at 1193. Despite the fact that some claims were allegedly subject to arbitration, we invoked

Pa.R.C.P. 213(a) and affirmed the order denying the petition to compel arbitration "in order to uphold judicial efficiency, maintain the consistency of the verdicts, and save the parties from the expenses associated with duplicative litigation." *Id*. As noted, litigation efficiency is also a goal of the FAA.

Similarly, the dispute in *School Dist. of Philadelphia v. Livingston-Rosenwinkel, P.C.*, 690 A.2d 1321 (Pa.Cmwlth. 1997), involved an arbitration provision and some parties who were not subject to the arbitration process, and issues that fell outside the scope of the arbitration agreement. The Commonwealth Court reasoned that requiring the defendant to arbitrate its claims against the additional defendant and relitigate the same liability and damage issues in two separate forums before two different factfinders, would be uneconomical for the court as well as the parties. Our sister court found that arbitration would not serve its purpose as it "would not promote the swift and orderly resolution of claims" but "engender a protracted, piecemeal disposition of the dispute." *Id*. at 1323. It concluded that, "public policy interests are best served by joinder, which would allow for resolution of the involved disputes at one time with all parties present." *Id*. Although this decision is not controlling, we find the court's reasoning compelling.

A federal district court in *Scott v. LTS Builders LLC*, 2011 U.S.Dist.LEXIS 144626 (M.D.Pa. 2011), arrived at a similar conclusion.

Therein, only one defendant was a signatory to an arbitration agreement; there were ten other defendants, five of whom insisted on a judicial resolution of their claims. The court reasoned, based upon *School District of Philadelphia*, *supra*, that sending the case against the sole signatory to arbitration would not satisfy Pennsylvania's public policy of enforcing arbitration agreements "as a means of promoting swift and orderly disposition of claims." *Scott*, *supra* at *14.

The propriety of severing wrongful death and survival actions to permit arbitration of the latter was recently considered by a federal district court in *Northern Health Facilities v. Batz*, 993 F. Supp. 2d 485, 496-497 (M.D. Pa. 2014). The district court relied upon United States Supreme Court precedent interpreting the FAA as "requir[ing] piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses*, *supra* at 20. In determining the enforceability of an arbitration agreement similar to the one at issue herein, the court concluded that it was "necessary to divide the wrongful death/survival action Complaint for resolution" where the wrongful death claims were not subject to arbitration under *Pisano*, and the defendant failed to provide any "colorable reason why the Survival Action claims . . . cannot be arbitrated." *Batz*, *supra* at 497. We are not bound by *Batz*, nor do we find it persuasive as the court did not discuss Pennsylvania's wrongful death statute, Pa.R.C.P. 213, or the consequences of severing these actions.

Extendicare contends that since the wrongful death and survival actions are distinct, and the damages, claims and potential beneficiaries are different, judicial economy would not be hindered by severing the survival action and submitting it to arbitration. We disagree. The issues are identical in the two actions. Litigation in two forums increases the potential for inconsistent liability findings between the wrongful death and survival actions. Furthermore, the damages overlap. Although lost earnings are generally recoverable in the survival action, they may take the form of lost contributions to the decedent's family, which are wrongful death damages. Lost earnings includes loss of retirement and social security income. **See Thompson v. City of Philadelphia**, 294 A.2d 826 (Pa.Super. 1972). Generally, hospital, nursing, and medical expenses are recoverable under either the wrongful death or survival act. **See Skoda v. West Penn Power Co.**, 191 A.2d 822 (Pa. 1963).[7] Given the potential for inconsistent liability and duplicative damage determinations, we do not believe this to be the type of piecemeal, "possibly inefficient" litigation, which the Supreme Court sanctioned in **Concepcion**, **supra** at 1758.

The statute and rule at issue are not "aimed at destroying arbitration" and do not demand "procedures incompatible with arbitration."

_____

[7] In wrongful death and survival actions governed by the MCARE Act, 40 P.S. § 1303 *et seq*., past medical expenses may only be recoverable only under the wrongful death act.

*Concepcion*, *supra* at 1747-48. Nor are they so incompatible with arbitration as to "wholly eviscerate arbitration agreements." *Id*. On the facts herein, the wrongful death beneficiaries' constitutional right to a jury trial and the state's interest in litigating wrongful death and survival claims together require that they all proceed in court rather than arbitration. In so holding, we are promoting one of the two primary objectives of arbitration, which is "to achieve streamlined proceedings and expeditious results." *Concepcion*, *supra* at 1742. For these reasons, we affirm the trial court's order overruling Extendicare's preliminary objection seeking to compel arbitration.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/2/2015