J-A04019-15

2015 PA Super 142

| | |
|---|---|
| DONALD E. TUOMI, ADMINISTRATOR OF THE ESTATE OF MARGARET C. TUMOI, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| EXTENDICARE, INC., EXTENDICARE HEALTH FACILITIES, INC., D/B/A HAVENCREST NURSING CENTER, EXTENDICARE HEALTH FACILITY HOLDING, INC., EXTENDICARE HEALTH SERVICES, INC., EXTENDICARE HEALTH NETWORK, INC., EXTENDICARE HOLDINGS, INC., KATHLEEN GASTAN, AN INDIVIDUAL; KENRIC MANOR FAMILY LIMITED PARTNERSHIP D/B/A KENRIC MANOR, | |
| APPEAL OF: EXTENDICARE, INC., EXTENDICARE HEALTH FACILITIES, INC., D/B/A HAVENCREST NURSING CENTER, EXTENDICARE HEALTH FACILITY HOLDING, INC., EXTENDICARE HEALTH SERVICES, INC., EXTENDICARE HEALTH NETWORK, INC., EXTENDICARE HOLDINGS, INC., | |
| Appellants | No. 865 WDA 2014 |

Appeal from the Order Entered April 24, 2014
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2013-1583

BEFORE:  BOWES, WECHT, and STRASSBURGER,[*] JJ.

---

[*] Retired Senior Judge assigned to the Superior Court.

OPINION BY BOWES, J.:                    **FILED JUNE 18, 2015**

Extendicare, Inc., Extendicare Health Facilities, Inc., d/b/a Havencrest Nursing Center, and the other Extendicare entities (collectively "Extendicare"), appeal from the April 24, 2014 order overruling preliminary objections in the nature of a petition to compel arbitration.[1]  We affirm based upon our recent decision in **Taylor v. Extendicare**, 2015 PA Super 64 (Pa.Super. April 2, 2015), which is controlling.

The facts pertinent to our analysis are as follows.  Margaret C. Tuomi ("Ms. Tuomi" or "Decedent") was a resident of Kenric Manor, an assisted living facility, for a period of time ending on May 31, 2011.  It is alleged that, while she was a resident at that facility, Kenric failed to provide the necessary staffing and resources to provide quality care for Ms. Tuomi.  Specifically, the staff failed to prevent, diagnose and treat Ms. Tuomo's illnesses including urinary tract infections and cellulitis, and permitted multiple pressure sores to develop and progress.  This negligence led to malnutrition, pain, hospitalization and death.

On May 31, 2011, Ms. Tuomi was transferred to Monongahela Valley Hospital for treatment of contractures in her extremities, a urinary tract infection, pneumonia and cellulitis in her left knee.  Following her discharge

---

[1] Defendant Kenric Manor, a non-signatory to the Arbitration Agreement, has filed a brief in opposition to bifurcation.  Kathleen Gaston has been dismissed from the case.

on June 3, 2011, she was admitted to Havencrest Nursing Center, an Extendicare nursing home facility, where she was noted to have Stage II, III and IV pressure wounds. According to the allegations in the complaint, Extendicare's negligent understaffing and the neglect of its agents and employees resulted in the aggravation of her pressure ulcers, pneumonia, Staph and E. coli infections, deterioration and death. Ms. Tuomi was discharged on September 14, 2011 and died on October 16, 2011.

The Decedent's husband, Donald ("Administrator"), was subsequently appointed Administrator of her Estate. He commenced the within negligence actions for wrongful death on behalf of the beneficiaries, as well survival actions premised on negligence and negligence *per se* based upon violations of the Neglect of Care-Dependent Persons Statute, 18 Pa.C.S. § 2713, and the Older Adult Protective Services Act, 35 P.S. § 10225.101. Administrator maintained that the negligent conduct of Kenric and Extendicare collectively caused Decedent's injuries and death.

In response, Extendicare filed preliminary objections seeking to have the case referred to arbitration pursuant to a Voluntary Arbitration Agreement signed by Administrator upon Ms. Tuomi's admission to the Extendicare facility. Since the preliminary objections presented factual issues, the parties engaged in discovery. Following briefing and oral argument, the trial court overruled Extendicare's preliminary objections seeking to compel arbitration. The trial court relied upon ***Pisano v.***

***Extendicare Homes, Inc.***, 77 A.3d 651 (Pa.Super. 2013), for the proposition that wrongful death claimants who were non-signatories to arbitration agreements could not be compelled to arbitration. Since Pa.R.C.P. 213(e) requires the consolidation of wrongful death and survival actions, the court concluded that the actions would remain together in court.

Extendicare timely appealed and raises one issue for our review: "Did the trial court commit an error of law, including a violation of the Federal Arbitration Act, when it overruled Appellants' preliminary objection in the nature of a motion to compel arbitration?" Appellant's brief at 4.

We review an allegation that "the trial court improperly overruled a preliminary objection in the nature of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence." ***Taylor***, ***supra*** at *4. "In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second factor we examine is whether the dispute is within the scope of the agreement. ***Pisano***, ***supra*** at 654; ***see also Elwyn v. DeLuca***, 48 A.3d 457, 461 (Pa.Super. 2012) (quoting ***Smay v. E.R. Stuebner, Inc.***, 864 A.2d 1266, 1270 (Pa.Super. 2004))." ***Taylor***, ***supra*** at *5.

Extendicare argues first that ***Pisano*** is not controlling because the issue herein is whether the arbitration agreement is enforceable against the

estate for purposes of the survival action. It alleges that the trial court erred in simply concluding that Pa.R.C.P. 213(e), which mandates the consolidation of wrongful death and survival actions, required the two actions to proceed together in court. Extendicare maintains that the survival claims should have been severed and allowed to proceed in arbitration because a valid agreement existed between the facility and the decedent. By refusing to compel arbitration of the survival claims, Extendicare charges that the trial court violated the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.

We acknowledged in **Taylor** that **Pisano** did not dispose of the propriety of bifurcating wrongful death and survival actions between court and arbitration. Although the **Pisano** trial court retained jurisdiction over both the wrongful death and survival actions pursuant to Pa.R.C.P. 213(e), we found in **Taylor** that the parties simply acquiesced in that application of Rule 213 by failing to challenge it on appeal. However, we addressed that issue in **Taylor** and held that Pa.R.C.P. 213(e) and the Wrongful Death Act precluded bifurcation, and further, that the Federal Arbitration Act did not pre-empt state law. That decision is controlling herein.

In support of preemption, Extendicare relies upon **Marmet Health Care Ctr., Inc. v. Brown**, 132 S.Ct. 1201 (2012) (*per curiam*), where the United States Supreme Court held that the Federal Arbitration Act pre-empted West Virginia's prohibition against pre-dispute agreements to

arbitrate personal-injury or wrongful-death claims against nursing homes. It held that the categorical rule prohibiting arbitration of a particular type of claim was "contrary to the terms and coverage of the FAA." *Id*. at 1204. The *Marmet* Court cited numerous cases where state laws that categorically prohibited arbitration of certain types of claims were held to be pre-empted, which Extendicare in turn cites herein. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995) (holding pre-empted New York's prohibition against arbitration of punitive damage claims); *Preston v. Ferrer*, 552 U.S. 346, 356 (2008) (state law granting state commissioner exclusive jurisdiction to decide issue subject to arbitration held pre-empted).

We rejected such reliance on *Marmet* in *Taylor*, *supra*. We held therein that "[n]either Pa.R.C.P. 213 nor 42 Pa.C.S. § 8301 prohibits the arbitration of wrongful death and survival claims[,]" and thus, our state law did not "mirror the categorical prohibition of arbitration of wrongful death and survival actions that the *Marmet* Court viewed as a clear conflict between federal and state law." *Taylor*, *supra* at *16. We viewed the rule and statute "as neutral regarding arbitration generally, and the arbitration of wrongful death and survival actions specifically." *Id*. at *17. We recognized that the purpose of the Wrongful Death Statute and Pa.R.C.P. 213(e) was to "avoid inconsistent verdicts and duplicative damages in overlapping claims" and that neither the statute or rule "preclude[d] wrongful death and survival actions from proceeding together in arbitration when all of the parties,

including the wrongful death beneficiaries, agree[d] to arbitrate." *Id*. at **17-18. Further, "[i]n the situation where the decedent or his representative has entered an enforceable agreement to arbitrate, and the wrongful death action is one brought by the personal representative pursuant to 42 Pa.C.S. § 8301(d) for the benefit of the decedent's estate, there would not appear to be any impediment to the consolidation of the actions in arbitration." *Id*. at *18.

Extendicare argues that the likelihood of overlapping damages is small in wrongful death/survival actions where, as here, there is no significant claim for lost earnings. We rejected a similar argument in *Taylor*, noting that damages overlap even in the situation where the Decedent is elderly and perhaps retired. Lost earnings includes loss of retirement and social security income. *See Thompson v. City of Philadelphia*, 294 A.2d 826 (Pa.Super. 1972). And, "[a]lthough lost earnings are generally recoverable in the survival action, they may take the form of lost contributions to the decedent's family, which are wrongful death damages." *Taylor* at *23. Furthermore, hospital, nursing, and medical expenses are generally recoverable in either action. *Id*. (citing *Skoda v. West Penn Power Co.*, 191 A.2d 822 (Pa. 1963)). We also noted that the liability issues are identical, presenting the potential for inconsistent determinations if litigated in two different forums.

Herein, as in *Taylor*, there are other defendants unrelated to Extendicare and who are non-signatories to the Arbitration Agreement. The *Taylor* codefendants did not participate in the appeal and took no position with regard to arbitration. In the instant appeal, defendant Kenric Manor has filed a brief and presented oral argument in support of affirmance. It asks this Court to consider "the interest of a party that is not a signatory to an arbitration agreement" and argues that bifurcation could negatively affect its position. Kenric Manor points to the fact that bifurcation might preclude it from mentioning Extendicare or pointing to Extendicare as the cause of the Decedent's condition, or that the determination of the arbitrator could have an unintended effect on the claims filed against Kenric Manor. It suggests further that documents and testimony presented at the arbitration might not be available for use by Kenric Manor in a subsequent court proceeding due to confidentiality provisions often attendant to arbitration. Kenric Manor maintains that its interests are better served if all claims brought by Administrator remain together in court.

Extendicare responds that the claims against Kenric Manor are not the same as those filed against Extendicare and that the policy considerations underlying Rule 213, *i.e.*, to prevent the litigation of the same claims twice and the duplication of damages, are not applicable herein. We disagree. Administrator has alleged that the negligence of Kenric Manor, Extendicare, or both caused and contributed to the injuries and death of Decedent. It is

possible that the defendants will assert cross-claims against each other. The factfinder will be charged with determining if one or both are liable and, in the event both parties are found liable, will apportion negligence between the joint tortfeasors. Hence, these claims and damages are overlapping.

In light of our disposition, we need not reach Kenric Manor's concerns. However, that entity highlights the practical consequences of bifurcating and splitting causes of action between different forums especially in negligence cases involving joint tortfeasor liability. Had we adopted the position advocated by Extendicare herein, we would be severing the wrongful death and survival actions as to both defendants, and sending the survival claims against Extendicare to arbitration. All wrongful death claims against Extendicare and Kenric Manor, together with survival claims against Kenric Manor, would remain in court.

In **Taylor**, we acknowledged concerns similar to those identified by Kenric Manor. **See Taylor** at *7 n.3 ("The splitting of the survival claim between two forums would result in either empty chairs at the arbitration, where an arbitrator would allocate responsibility for negligence among the Defendants, or those parties would be pressured to participate in arbitration to protect their rights. Either scenario subverts the policies favoring arbitration."). In addition, we would anticipate challenging legal questions involving the collateral estoppel effect, if any, to be given to the first judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/18/2015