J-A31011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JAMES D. MINICH, AS ADMINISTRATOR FOR THE ESTATE OF MARY E. SHAFFER, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GOLDEN GATE NATIONAL SENIOR CARE, LLC, GGNSC LANCASTER, LP D/B/A GOLDEN LIVING CENTER-LANCASTER; GGNSC LANCASTER GP, LLC; GGNSC EQUITY HOLDINGS, II, LLC; GGNSC ADMINISTRATIVE SERVICES, LLC; GGNSC CLINICAL SERVICES, LLC; GGNSC HOLDINGS, LLC; GOLDEN GATE ANCILLARY, LLC; DENISE CURRY, RVP; AND ROHAN BLACKWOOD, NHA | |
| Appellants | No. 314 MDA 2015 |

Appeal from the Order Entered February 4, 2015
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-14-04449

BEFORE:  PANELLA, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED DECEMBER 21, 2016**

Golden Gate National Senior Care, LLC, GGNSC Lancaster, LP, d/b/a Golden Living Center-Lancaster, GGNSC Lancaster GP, LLC, GGNSC Equity Holdings, II, LLC, GGNSC Administrative Services, LLC, GGNSC Clinical Services, LLC, GGNSC Holdings, LLC, Golden Gate Ancillary, LLC, Denise

---

[*] Retired Senior Judge assigned to the Superior Court.

Curry, RVP, and Rohan Blackwood, NHA (collectively, "Golden Gate") appeal from the order of the Court of Common Pleas of Lancaster County, which overruled the preliminary objections in the nature of a motion to compel arbitration filed by Golden Gate in response to the wrongful death and survival action filed by Appellee James D. Minich as Administrator of the Estate of Mary E. Shaffer, Deceased. Upon careful review, we vacate the order and remand for further proceedings.

The trial court set forth the factual and procedural background of this case as follows:

> Minich alleges that [Golden Gate] owned, operated, licensed and/or managed Golden Living Center – Lancaster (the Facility) and [was] engaged in the business of providing skilled nursing care and assisted living/personal care services to the general public. Minich's decedent, Mary E. Shaffer, was a resident of the Facility for a period of time ending on February 28, 2014. She died on March 31, 2014.
>
> Upon Shaffer's admission to the Facility, she did not sign any paperwork relative to her admission. Rather, [Golden Gate] contend[s] that Shaffer's son and power of attorney, James Minich, at some unknown point in time, "entered into a valid [Alternative Dispute Resolution] Agreement on Shaffer's behalf upon her admission to the Facility. This ADR Agreement provided that any disputes arising out of or in any way relating to the Agreement or to Shaffer's stay at the Facility, which could constitute a legally cognizable cause of action in a court of law, "shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration." The [A]greement was not signed by any [Golden Gate] representative.
>
> On May 20, 2014, Minich, as Administrator of [Shaffer's] Estate, filed a praecipe for writ of summons against [Golden Gate], and subsequently a complaint on July 30, 2014, asserting wrongful death and survival claims. Minich alleged that [Golden Gate's]

professional negligence and reckless conduct caused his decedent's severe injuries during her admission at the Facility.

. . .

Golden Gate filed preliminary objections to the complaint seeking to compel this matter to arbitration[.] Following oral argument by counsel, an order was entered on February 4, 2015, overruling and dismissing the motion to compel arbitration.

Trial Court Opinion, 4/8/15, at 2-4 (citations to the record omitted).

This timely appeal follows,[1] in which Golden Gate raises the following issues for our review:

1. Did the trial court erroneously rule that the parties did not form an agreement to arbitrate because the arbitration agreement was not signed on behalf of the nursing home facility?

2. [As r]eflected in the trial court's [Pa.R.A.P.] 1925(a) opinion, but not in the order overruling the preliminary objections, did the trial court erroneously rule that any agreement to arbitrate would be unenforceable under *Taylor v. Extendicare Health Facilities, Inc.*, [113 A.3d 317 (Pa. Super. 2015)], given that the arbitration agreement here is governed by the Federal Arbitration Act?

Brief of Appellants, at 4.

_____

[1] As a general rule, an order denying preliminary objections is interlocutory and, thus, not appealable as of right. There exists, however, a narrow exception to this rule for cases in which the appeal is taken from an order denying a petition to compel arbitration. *Elwyn v. DeLuca*, 48 A.3d 457, 460 n.4 (Pa. Super. 2012); *Shadduck v. Christopher J. Kaclik, Inc.*, 713 A.2d 635, 636 (Pa. Super. 1998). *See also* 42 Pa.C.S.A. § 7320(a)(1) (appeal may be taken from order denying application to compel arbitration); Pa.R.A.P. 311(a)(8) (appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from order "which is made appealable by statute or general rule.").

We begin by noting that "[o]ur review of a claim that the trial court improperly denied [the] appellant's preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." *Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1112 (Pa. Super. 2007), quoting *Midomo Company, Inc. v. Presbyterian Housing Development Company*, 739 A.2d 180, 186 (Pa. Super. 1999). Since contract interpretation is a question of law, our review of the trial court's decision is *de novo* and our scope is plenary. *Bucks Orthopaedic Surgery Associates, P.C. v. Ruth*, 925 A.2d 868, 871 (Pa. Super. 2007).

We note preliminarily that this Court's decision in *Taylor*, upon which the trial court relied in its Rule 1925(a) opinion, was recently reversed by our Supreme Court. *See Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490, 509 (Pa. 2016) (*Taylor II*). Accordingly, Golden Gate's second issue on appeal is moot and the only issue remaining for us to address is the court's finding that the parties did not form an agreement to arbitrate because the agreement was not signed on behalf of Golden Gate. Specifically, Golden Gate asserts that the court erroneously applied this Court's holding in *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A.3d 94 (Pa. Super. 2015), and distinguishes the instant matter on its facts. We agree, and conclude that the absence of a Golden Gate representative's signature is not dispositive under the facts of this case.

- 4 -

We begin by noting:

> Arbitration cannot be compelled in the absence of an express agreement to arbitrate. The touchstone of any valid contract is mutual assent and consideration. The issue of whether parties agreed to arbitrate is generally one for the court, not the arbitrators. When addressing that issue, courts generally apply ordinary state law contract principles, but in doing so, must give due regard to the federal policy favoring arbitration.

*Bair*, 108 A.3d at 96 (internal citations and quotation marks omitted).

In its February 4, 2015 order, the trial court cited to the January 15, 2015 Superior Court decision in *Bair* in support of its dismissal of Golden Gate's motion to compel arbitration. In a parenthetical, the court stated that *Bair* held that a "nursing home operator failed to manifest its consent to arbitrate by not affixing [the] signature of its representative to [the] arbitration agreement[.]" Trial Court Order, 2/4/15, at ¶ 1 n.4. Subsequently, in its Rule 1925(a) opinion, the court briefly noted as follows with regard to its earlier reliance on *Bair*:

> In denying arbitration, this [c]ourt, in a footnote, cited to the January 15, 2015, Superior Court decision in [*Bair*], which held that where the nursing home operator failed to manifest its consent to arbitrate by not affixing the signature of its representative to the arbitration agreement, the agreement was invalid as there was no meeting of the minds.

Trial Court Opinion, 4/8/15, at 4.

Although the court's opinion mentioned *Bair* in passing, the court's substantive discussion focused entirely on this Court's decision in *Taylor*, which held that an arbitration agreement signed by decedent's authorized representative was not binding upon non-signatory wrongful death

- 5 -

beneficiaries, and that because the Federal Arbitration Act ("FAA") did not preempt state law mandating consolidation of wrongful death and survival actions, trial courts were not required to bifurcate cases to compel arbitration of survival claims. Indeed, because the trial court was of the opinion that *Taylor* was fully dispositive and compelled a trial in both wrongful death and survival actions, it stated in its opinion that "[t]he Superior Court need not even determine, in the first instance, the validity of the arbitration agreement in this case[.]" Trial Court Opinion, 4/8/15, at 5.

However, subsequent to the trial court's decision, our Supreme Court granted allowance of appeal in *Taylor*. On September 28, 2016, the Court issued its decision in the matter, reversing this Court and holding that the FAA does, in fact, preempt state law requiring the consolidation of wrongful death and survival actions. Accordingly, under *Taylor II*, while non-signatory wrongful death beneficiaries still may not be bound by an agreement to arbitrate, "the FAA binds state courts to compel arbitration of claims subject to an arbitration agreement." *Taylor II*, 147 A.3d at 509, citing 9 U.S.C. § 2. Thus, where a valid agreement to arbitrate exists, survival actions must now be bifurcated from wrongful death claims and proceed to arbitration.

As a result of the high court's decision in *Taylor II*, the basis for the trial court's disposition of this matter is no longer the law of the Commonwealth. Accordingly, it is necessary to look to the validity of the underlying arbitration agreement to determine whether Minich's survival

- 6 -

action is subject to arbitration. As noted ***supra***, the trial court relied on its reading of ***Bair*** and concluded that an arbitration agreement may be found to be invalid solely because it lacks a signature on behalf of the nursing facility. Our reading of ***Bair*** does not lead us to the same conclusion.

In ***Bair***, the plaintiff, who was the personal representative of her mother's estate, brought a wrongful death and survival action against Manor Care, a nursing facility, alleging abuse and neglect that ultimately resulted in her mother's death. Manor Care filed preliminary objections in the form of a motion to compel arbitration pursuant to the terms of an arbitration agreement signed by Bair as her mother's attorney-in-fact. After permitting discovery as to the issue of the agreement's enforceability, the trial court overruled Manor Care's preliminary objections and allowed the case to proceed in common pleas court.

On appeal, this Court affirmed. In doing so, the Court stated that "[t]he issue is not whether the arbitration agreement was signed by the party sought to be bound, but whether there was a meeting of the minds, that is, whether the parties agreed in a clear and unmistakable manner to arbitrate their disputes." ***Id.*** at 97. Based upon the totality of the circumstances present in ***Bair***, the Court found that no meeting of the minds had occurred, noting the following:

> Even if we were to view the presentation of the form [arbitration agreement] as an offer, as Manor Care suggests, it lacked essential terms such as the names of the contracting parties, the date of the agreement, and the brochure describing the

arbitration process, which was expressly made a part of the agreement.

. . .

We note, too, that while *the absence of signatures is not fatal unless required by law or by the intent of the parties*, the agreement herein expressly required the signatures of both parties. The bold-print language above the signature lines established that "the parties" confirmed that they waived the right to a trial and consented to arbitration by signing the agreement on the designated lines. In light of the fact that Manor Care supplied the form document and terms therein, it is presumed to have known the effect of its terms and conditions. By failing to affix its signature, Manor Care did not consent to arbitrate. Herein, the party seeking to enforce the arbitration agreement is the party who did not sign the agreement. Absent mutual assent, there was no enforceable agreement to arbitrate.

*Id.* at 98-99 (emphasis added).

As Golden Gate correctly points out in its brief, the facts of the matter *sub judice* are, in important respects, distinguishable from **Bair**. Unlike in **Bair**, the instant arbitration agreement did not expressly require the signatures of both parties. In fact, the agreement provided by Golden Gate explicitly stated that "[t]he agreement shall be binding upon the Facility when signed by or on behalf of the Resident *regardless of whether this Agreement has been signed by a Facility representative*." Alternative Dispute Resolution Agreement, at ¶ VIII (emphasis added). Additionally, in **Bair**, blank spaces on the first page of the agreement, intended for the insertion of the names of the contracting parties, were left blank. Here, the blank spaces were duly filled in with the names of the facility and the resident. Finally, in **Bair**, a brochure describing the arbitration process was expressly incorporated into the agreement by reference, but was not actually

attached to the agreement. Here, no such missing term is at issue. In light of these significant differences, the trial court's sole emphasis on the lack of a signature by a representative of Golden Gate renders its reliance on **Bair** misplaced.

Despite our disagreement with the trial court's reading of **Bair** and its reliance thereon, the record before us is insufficient to determine whether a valid agreement to arbitrate exists. The trial court, believing **Bair** to be dispositive, declined to rule on the discovery requested by Minich in his response to Golden Gate's preliminary objections. However, Pa.R.C.P. 1028 provides that "[i]f an issue of fact is raised [by preliminary objections], the court *shall* consider evidence by deposition or otherwise." Pa.R.C.P. 1028(c)(2) (emphasis added). Additionally, the Note to subdivision (c)(2) states that "[p]reliminary objections raising an issue under subdivision (a) . . . (6) [(relating to agreements for alternative dispute resolution)] . . . cannot be determined from facts of record." **Id.**, note. Here, questions of law and fact regarding the validity of the agreement remain outstanding and unaddressed by the trial court. Accordingly, we are constrained to remand this matter to the trial court for discovery on the issue of whether an enforceable arbitration agreement exists. **See Holt Hauling & Warehousing Sys., Inc. v. Aronow Roofing Co.**, 454 A.2d 1131, 1133 (Pa. Super. 1983) (where preliminary objections raise issue of fact, court may not reach determination based upon its view of controverted facts, but

must resolve dispute by receiving evidence thereon through interrogatories, depositions or evidentiary hearing).

Order vacated. Case remanded for proceedings in accordance with the dictates of this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2016