J-A03026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BRANDON HETRICK, EXECUTOR OF THE ESTATE OF: WILLIAM WASHINGTON, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MANORCARE OF CARLISLE, PA, LLC, D/B/A MANORCARE HEALTH SERVICES, CARLISLE; HRC MANORCARE, INC., ET AL., | |
| Appellants | No. 266 MDA 2014 |

Appeal from the Order entered January 13, 2014
In the Court of Common Pleas of Cumberland County
Civil Division at No: 11-7979

BEFORE:  MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 03, 2015**

This case concerns the enforceability of a pre-dispute agreement to arbitrate claims under a nursing home agreement.  This Court recently has decided appeals we find dispositive here.  In two cases, we held unenforceable arbitration agreements similar to the agreement here.[1]

---

[*] Former Justice specially assigned to the Superior Court.

[1] ***See Taylor v. Extendicare Health Facilities, Inc.***, 2015 PA Super 64, 2015 WL 1514487, 2015 Pa. Super. LEXIS 144 (filed Apr. 2, 2015), *pet. for allowance of appeal filed*, No. 161 WAL 2015 (Pa. May 4, 2015); ***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651, 663 (Pa. Super. 2013), *appeal denied*, 86 A.3d 233 (Pa.), *cert. denied*, 134 S. Ct. 2890 (2014).

*Pisano* and *Taylor* compel us here to affirm the trial court's order, which overruled preliminary objections seeking to compel arbitration.

Appellants (collectively, ManorCare) own and operate nursing homes. On April 14, 2009, William Washington, the decedent, was admitted to ManorCare's nursing home in Carlisle, Cumberland County. According to his admission documents, Washington generally was in poor health, and specifically was suffering from complications of diabetes. The next day, he signed a document entitled "Arbitration and Limitation of Liability Agreement" (Arbitration Agreement). The Arbitration Agreement contains the following clauses:

> Any and all claims or controversies between [ManorCare] and [Washington] arising out of or in any way related to or connected to [Washington's] stay and care at [ManorCare], including, but not limited to, disputes regarding alleged personal injury to [Washington] caused by improper or inadequate care, allegations of medical malpractice, and interpretation of this Agreement, whether arising out of State or Federal law, and whether based upon statutory duties, breach of contract, tort theories or other legal theories under Pennsylvania law, including unpaid nursing home or related charges, shall be submitted to final and binding arbitration. Except as expressly set forth herein, the provisions of the Pennsylvania Uniform Arbitration Act, 42 Pa. Cons. Stat. § 7301, *et*[] *seq.*, shall govern the arbitration. Each party hereby waives its right to file a court action for any matter covered by this agreement.

> * * *

> This Arbitration Agreement is intended to be enforceable to the extent permitted by law, and shall only be limited to the extent that it is expressly prohibited or limited under applicable federal, state or local law.

ManorCare's Prelim. Objections, 9/27/12, Exhibit B, Arbitration Agreement ¶¶ A(1.1), D(1.3).

A little over one year later, on May 3, 2010, Washington died intestate after spending several days in hospice care. One of Washington's three children, Appellee, Brandon Hetrick, was appointed executor of Washington's estate. Hetrick filed a wrongful death and survival action against ManorCare. ManorCare filed preliminary objections seeking to compel arbitration under the Arbitration Agreement. In his response to the preliminary objections, Hetrick claimed that Washington did not sign the Arbitration Agreement. Following oral argument, the trial court *en banc* granted discovery "on the issue of whether [Appellee's] decedent signed the [A]rbitration [A]greement at issue." Trial Court Order, 4/19/13. After completing discovery, the parties submitted supplemental memoranda of law. Hetrick abandoned his argument that Washington did not sign the Arbitration Agreement, but instead argued the Arbitration Agreement was unenforceable, unconscionable, or void. On January 13, 2014, the trial court overruled ManorCare's preliminary objections.

ManorCare timely appealed, and filed a concise statement of errors complained of on appeal as ordered.[2] In its opinion issued under Pa.R.A.P.

_____

[2] An order overruling preliminary objections to compel arbitration is interlocutory, but is appealable as of right. **See** Pa.R.A.P. 311(a)(8); 42 Pa.C.S.A. § 7320; **see also Pisano**, 77 A.3d at 654.

1925(a), the trial court explained that *Pisano* precluded enforcement of the arbitration agreement as to the wrongful death claim, and Pennsylvania Rule of Civil Procedure 213(e)[3] precluded severance of the survival action. The trial court overruled ManorCare's preliminary objections to compel arbitration. It did not address Hetrick's unconscionability argument.

On appeal, ManorCare, argues the trial court erred in failing to order severance of the survival action claims. *See* Appellants' Brief at 4. Appellee contends that, if we find the survival action severable, we may affirm on the alternative ground that the Arbitration Agreement is unconscionable.

"Our review of a claim that the trial court improperly denied the appellant's preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." *Pisano*, 77 A.3d at 654 (quoting *Walton v. Johnson*, 66 A.3d 782, 787 (Pa. Super. 2013)).

> In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration." *Elwyn*[ *v.*

---

[3] Rule 213(e) provides, in relevant part:

> A cause of action for the wrongful death of a decedent and a cause of action for the injuries of the decedent which survives his or her death may be enforced in one action, but if independent actions are commenced they shall be consolidated for trial.

Pa.R.C.P. No. 213(e).

- 4 -

> *DeLuca*, 48 A.3d 457, 461 (Pa. Super. 2012)] (quoting *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1270 (Pa. Super. 2004)). First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement.

*Id.* at 654-55. "Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary." *Elwyn*, 48 A.3d at 461.

In *Pisano*, we held that "wrongful death actions are derivative of decedents' injuries but are not derivative of decedents' rights." *Id.* at 660. Therefore, an agreement to arbitrate between the decedent and the nursing home does not bind the decedent's beneficiaries who have the right to bring a wrongful death claim.[4] *Id.* at 660-62. Such beneficiaries were neither a party to, nor a third-party beneficiary of, the agreement. *Id.* Accordingly, we rejected the nursing home's argument that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, required the decedent's representative to arbitrate the wrongful death claim. *Pisano*, 77 A.3d at 660-62. The FAA expresses a policy in favor of arbitration, but it does not make arbitration agreements more enforceable than other contracts. *Id.* Thus, in *Pisano*, we held the arbitration agreement between the decedent and the nursing home was unenforceable under general principles of contract law.

---

[4] 42 Pa.C.S.A. § 8301(b) limits beneficiaries to spouses, children, or parents. The beneficiaries in *Pisano* and this case are children of the decedents.

*Pisano* is controlling *vis-à-vis* Hetrick's wrongful death claims, which ManorCare implicitly recognizes. As a remedy, ManorCare requests that we reverse and remand for the trial court to sever and send to arbitration the survival action claims. We decline to do so, as we find *Taylor* dispositive of this argument.

In *Taylor*, the decedent was hospitalized several times for various maladies while living in an assisted living facility. *Taylor*, 2015 WL 1514487, at *1, 2015 Pa. Super. LEXIS 144, at *1-3. She was eventually transferred to a nursing home, and then to hospice care, where she passed away. The decedent's co-executors sued the hospital, the assisted living facility, and the nursing home for negligence. The nursing home filed preliminary objections, contending that the claims against it were subject to arbitration. The trial court overruled the preliminary objections, and the nursing home appealed.

We first held that *Pisano* precluded arbitration of the co-executors' wrongful death claim against the nursing home. *Id.* at *2, 2015 Pa. Super. LEXIS 144, at *5-6. We then held that the survival action claim also was not subject to arbitration. We began by noting that Rule 213(e) requires consolidation of wrongful death and survival action claims. We stated further:

> Nor does Pa.R.C.P. 213(e) provide the only support for consolidating the wrongful death and survival actions.[n.4] In the wrongful death statute, 42 Pa.C.S. § 8301(a), the legislature acknowledged the overlap in the wrongful death and survival

actions and the potential for duplicate recovery, and mandated consolidation of the actions:

> (a) General rule.—An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime **and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.**

42 Pa.C.S. § 8301(a) (emphasis added). We find both the rule and the statute applicable.

> [n.4] Pa.R.C.P. 1020(d)(1) is also implicated herein. It provides for the mandatory joinder in separate counts of all causes of action against the same person arising from the same transaction or occurrence to avoid waiver. The basis for both Rule 213 and Rule 1020 "is the avoidance of multiple trials and proceedings involving common facts or issues or arising from the same transaction or occurrence. The avoidance of duplication of effort is a benefit to both the parties and the courts." 1990 Explanatory Comments to Pa.R.C.P. 213.

*Taylor*, 2015 WL 1514487, at *4 & n.4, 2015 Pa. Super. LEXIS 144, at *9-10 & n.4.

Next, we rejected the nursing home's claim that the FAA preempts Rule 213(e) insofar as it operates to preclude arbitration of survival action claims joined with non-arbitral wrongful death claims:

> Preemption stems from the Supremacy Clause of the United States Constitution, Article VI, cl. 2, which provides that federal law is paramount, and that laws in conflict with federal law are without effect. *Altria Group, Inc. v. Good*, 555 U.S. 70 (2008). There are several types of preemption, one being express preemption, where the federal law contains a provision announcing its intention to supplant state law. There is also field preemption, where the federal statute "reflect[s] a Congressional

- 7 -

intent to occupy the entire field" of law. ***Volt Information Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.***, 489 U.S. 468, 477 (1989). The [FAA] does not contain an express preemption provision and Congress did not intend to occupy the field of arbitration. ***Id.***

However, as this Court noted in ***Trombetta v. Raymond James Fin. Servs.***, 907 A.2d 550, 564 (Pa. Super. 2006), "[e]ven when Congress has not completely displaced state regulation in an area, . . . state law may nonetheless be pre-empted to the extent that it conflicts with federal law; that is, to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ***Trombetta***, 907 A.2d at 564 (quoting ***Volt***, 489 U.S. at 477). This concept is known as conflict preemption, and may arise in two contexts. First, a conflict occurs when compliance with both state and federal law is an impossibility. ***Holt's Cigar Co. v. City of Phila.***, 10 A.3d 902, 918, (Pa. 2011). Second, conflict preemption may be found when state law "stands as an obstacle to the accomplishments and execution of the full purposes and objectives of Congress." ***Id.; Barnett Bank of Marion County v. Nelson***, 517 U.S. 25, 31 (1996). It is this type of conflict preemption that [the nursing home] contends is applicable herein.

Pennsylvania applies a presumption against federal preemption of state law. ***Dooner v. DiDonato***, 971 A.2d 1187 (Pa. 2009) (citing ***Altria Group, Inc.***, 555 U.S. at 77) (When addressing questions of express or implied preemption, we begin our analysis "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."). This presumption flows from the existence of "dual jurisdiction" and arises "from reasons of comity and mutual respect between the two judicial systems that form the framework" of our federalist system. ***Kiak v. Crown Equip. Corp.***, 989 A.2d 385, 390 (Pa. Super. 2010).

With these principles in mind, we turn to the federal law that [the nursing home] contends pre-empts state law herein, the FAA. The FAA was promulgated because the judiciary was reluctant to enforce arbitration agreements, and the act was intended to place arbitration agreements on the same footing as other contracts. ***Volt***, 489 U.S. 468. The Supreme Court reiterated in ***Dean Witter Reynolds Inc. v. Byrd***, 470 U.S.

213, 219 (1985), that "the overriding goal of the Arbitration Act was [not] to promote the expeditious resolution of claims," but to "ensure judicial enforcement of privately made agreements to arbitrate." Although the *Dean Witter* Court downplayed the notion that a desire for efficiency motivated the passage of the FAA, the House Report on the FAA, quoted therein, suggests that efficiency, both temporal and financial, played a role in the passage of the FAA. The Report stated, "It is practically appropriate that the action should be taken at this time when there is so much agitation against the costliness and delays of litigation. These matters can be largely eliminated by agreements for arbitration, if arbitration agreements are made valid and enforceable." H.R. Rep. No. 96, 68th Cong., 1st Sess., 2 (1924).

Consistent with the goal of ensuring that arbitration agreements are enforced, however, the FAA does not require parties to arbitrate absent an agreement to do so. *See Prima Paint Corp. v. Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12 (1967) (construing the Act as designed "to make arbitration agreements as enforceable as other contracts, but not more so"). Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the FAA. *Gaffer Ins. Co. v. Discover Reins. Co.*, 936 A.2d 1109, 1113 (Pa. Super. 2007). However, as this Court stated in *Pisano*, "compelling arbitration upon individuals who did not waive their right to a jury trial" infringes upon a constitutional right conferred in Pa. Const. art. 1, § 6 ("Trial by jury shall be as heretofore, and the right thereof remain inviolate."). *See Bruckshaw v. Frankford Hosp. of City of Phila.,* 58 A.3d 102, 108–109 (Pa. 2012) (recognizing constitutional right to jury trial in both civil and criminal cases). We added in *Pisano* that denying wrongful death beneficiaries their right to a jury trial "would amount to this Court placing contract law above that of both the United States and Pennsylvania Constitutions." *Pisano*, 77 A.3d at 660–61.

[The nursing home] maintains that the survival claim against it must be severed and enforced in arbitration, and that state law to the contrary is pre-empted. We disagree. Neither Pa.R.C.P. 213 nor 42 Pa.C.S. § 8301 prohibits the arbitration of wrongful death and survival claims. Thus, the instant case does not mirror the categorical prohibition of arbitration of wrongful death and survival actions that the *Marmet* Court viewed as a clear conflict between federal and state law. *See also e.g., Preston*

*v. Ferrer*, 552 U.S. 346, 356 (2008) (FAA pre-empts state law granting state commissioner exclusive jurisdiction to decide issue the parties agreed to arbitrate); ***Mastrobuono v. Shearson Lehman Hutton, Inc.***, 514 U.S. 52, 56 (1995) (FAA pre-empts state law requiring judicial resolution of claims involving punitive damages); ***Perry v. Thomas***, 482 U.S. 483, 491 (1987) (FAA pre-empts state-law requirement that litigants be provided a judicial forum for wage disputes); ***Southland Corp.***, 465 U.S. 1, 16 (1984) (FAA pre-empts state financial investment statute's prohibition of arbitration of claims brought under that statute).

* * *

The statute and rule at issue are not "aimed at destroying arbitration" and do not demand "procedures incompatible with arbitration." ***AT&T Mobility LLC v. Concepcion***, 131 S. Ct. 1740, 1747–48 (2011). Nor are they so incompatible with arbitration as to "wholly eviscerate arbitration agreements." ***Id.*** On the facts herein, the wrongful death beneficiaries' constitutional right to a jury trial and the state's interest in litigating wrongful death and survival claims together require that they all proceed in court rather than arbitration. In so holding, we are promoting one of the two primary objectives of arbitration, which is "to achieve streamlined proceedings and expeditious results." ***Concepcion***, 131 S. Ct. at 1742. For these reasons, we affirm the trial court's order overruling [the nursing home's] preliminary objection seeking to compel arbitration.

***Taylor***, 2015 WL 1514487, at *5-7, 9, 2015 Pa. Super. LEXIS 144, at *12-17, 24 (some internal citations altered and parallel citations omitted).

In ***Taylor***, we thus rejected an argument identical to the argument ManorCare makes here. Under ***Pisano***, Hetrick's wrongful death claims are not arbitral, because he is not a party to the Arbitration Agreement between his deceased father and ManorCare. Moreover, under ***Taylor***, Rule 213(e), which is not preempted by the FAA, requires the survival action claims to be consolidated with the wrongful death claims.

Since **Pisano** and **Taylor** are dispositive here, we need not address Hetrick's argument that the unconscionability of the Arbitration Agreement provides an alternative basis to affirm.  In sum, the trial court did not err in overruling ManorCare's preliminary objections.[5]  Consequently, we affirm.

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/3/2015

---

[5] We recognize that legal issues similar to the ones raised in this case are pending before this Court *en banc*.  **See MacPherson v. The Magee Mem. Hosp. for Convalescence**, No. 80 EDA 2013 (argued Mar. 24, 2015).  In **MacPherson**, however, no beneficiaries under 42 Pa.C.S.A. § 8301(b) existed, so the decedent's personal representative brought a wrongful death claim on behalf of the estate under § 8301(d).