**Lipshutz v. St. Monica Manor**

440

*Martin S. Kardon*, for plaintiff.

*Jacquelyn J. Ager, Nicholas M. Centrella* and *Frank L. Emmerich, Jr.*, for defendants.

BERNSTEIN, *J.*, October 16, 2013—On May 16, 2013, plaintiffs filed an amended complaint which alleged that substandard care at St. Monica Manor led to plaintiff's decedent's untimely death. Plaintiffs assert claims on behalf of plaintiff's decedent and her estate under Pennsylvania's Wrongful Death Act and Survival Act statutes. The decedent is survived by four children, Elizabeth Lipshutz, Susan Smit, Donald Fitzsimmons, and Steven Fitzsimmons. On June 5, 2013, defendants St. Monica Manor, Catholic Healthcare Services, and Archdiocese of Philadelphia filed preliminary objections alleging that plaintiffs' claims are subject to a valid and binding arbitration clause. On June 5, 2013, the parties submitted a joint stipulation agreeing to conduct limited discovery on the enforceability of the arbitration agreement. On July 31, 2013, this court ordered discovery, directed plaintiffs to answer defendants' preliminary objections, and set a hearing date. The hearing was held on September, 17, 2013.

In 1993, plaintiff's decedent executed a power of attorney ("1993 POA") which appointed her two daughters as attorneys-in-fact. The 1993 POA stated, "This power of attorney shall become effective only upon my disability as certified in writing by two physicians. I would be disabled if I were unable to manage my property and affairs effectively for reasons such as mental illness, mental

deficiency, physical illness or disability, advanced age, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance."

On November 4, 2011, plaintiff's decedent suffered a stroke and was admitted to Jefferson University Hospital ("Jefferson Hospital"). After the stroke, Ms. Lipshutz, plaintiff's decedent's daughter and executor of the estate, obtained a letter from plaintiff's decedent's physician explaining that the patient's stroke left her "physically unable to care for her son."[1] Plaintiff's decedent remained at Jefferson Hospital for two weeks before she was transferred to defendant St. Monica Manor's facility. The Jefferson Hospital discharge records state that plaintiff's decedent had an "impaired mental status." They also demonstrate that she was unable to feed herself.[2]

Plaintiff's decedent entered St. Monica Manor on November 11, 2011. Plaintiff's decedent's records demonstrate that upon admission she was confused.[3] Some days later, as part of the formal admission process, Ms. Lipshutz signed an admission agreement.[4] That agreement contained a mandatory arbitration clause. St. Monica Manor accepted Ms. Lipshutz's signature pursuant to her power under the 1993 POA which was made part of the nursing home records. She was the only one of plaintiff's decedent's four surviving children to sign the arbitration agreement.

This case presents issues of first impression concerning federal preemption and the neutral application of general

1. 11/17/11 letter of Dr. Timothy Ambrose.
2. Jefferson Hospital Hospital discharge summary.
3. St. Monica's Manor 11/22/11 progress report.
4. The agreement is dated November 21, 2011.

Pennsylvania contract law.[5] It also raises issues of the validity of the arbitration agreement, whether the agreement is binding on other children who may recover under the survival and wrongful death statutes, whether the court can properly sever one of four claimants under the statutes, or even separate the wrongful death from the survival claims.[6]

Ms. Liphutz signed the admission agreement pursuant to her authority under the 1993 POA. This POA specifically required the decedent's disability be "certified in writing" by two physicians. Plaintiffs claim that this formal certification is a prerequisite to any authority, and therefore, the court cannot look to the totality of circumstances to make any factual determination about the validity of the POA at the time the arbitration agreement was signed. However, where continued care is essential to a patient's well being, as it clearly was here, the court must make an ex post facto determination as to the patient's actual disability. If healthcare facilities were required to wait for formal certifications, patients would be forced to await formalities before desperately needed care was provided. In the case of seriously ill or injured patients, this is literally the difference between life and death. The court must look to the totality of the evidence presented.

The medical records demonstrate that plaintiff's decedent was disabled as defined by the POA when she entered St. Monica Manor. After her stroke, plaintiff's decedent spent weeks at Jefferson Hospital. Her physician

---

5. The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any such contract." 9 U.S.C. § 2.

6. *See* Pa. R.C.P. 213(e).

believed that her physical condition prevented her from continuing as her disabled son's guardian. Likewise, the hospital discharging physician believed that her mental status was impaired. She remained confused at St. Monica Manor. The evidence clearly demonstrates that when the arbitration agreement was signed, plaintiff's decedent was unable to manage her affairs. Ms. Lipshutz had authority to act on her mother's behalf with or without formal "certifications."

This raises the issue of for whom, and for what claims, that signature is binding. In the only relevant Pennsylvania authority, *Pisano v. Extendicare Homes, Inc.*,[7] the Superior Court was presented with these issues. Plaintiff's decedent entered a long-term care facility. His daughter, Ms. Pisano, held a power of attorney for her father. She signed an admission agreement on his behalf. Plaintiff's decedent's surviving children brought a wrongful death claim against the facility. Ms. Pisano was not a party to the action and disclaimed any interest in any litigation proceeds.[8] The facility claimed that the case must go to arbitration.

To determine whether the arbitration agreement was binding on wrongful death claimants, the Superior Court first considered Pennsylvania's well-established public policy favoring arbitration, which aligns with the federal policy expressed in the FAA.[9] "The fundamental purpose of the Federal Arbitration Act is to relieve the parties from expensive litigation and 'to help ease the current

---

7. 2013 Pa. Super. 232 (Pa. Super 2013).
8. *Id.* at 2.
9. *Id.* at 8 (citing *Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1112 (Pa. Super. Ct. 2007)).

congestion of court calendars.'"[10] However, this policy was not intended to place arbitration agreements above other contracts. "The FAA had not been designed to preempt all state law related to arbitration."[11] Rather, "when addressing the specific issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration."[12] In *Elwyn v. Deluca*,[13] the Superior Court explained that "Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication. In general, only parties to an arbitration agreement are subject to arbitration."[14]

In *Pisano*, the court found that the nursing home had an agreement only with the decedent, not the decedent's heirs. Pennsylvania's wrongful death statute does not characterize wrongful death claimants as third-party beneficiaries. "Wrongful death actions are derivative of decedents' injuries but are not derivative of decedents'

10. *Joseph Muller Corporationurich v. Commonwealth Petrochemicals, Inc.*, 334 F. Supp. 1013, 1019 (S.D.N.Y. 1971) (quoting *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 410 (2d Cir. 1959)).

11. *Gaffer*, 936 A.2d at 1113-1114 (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293-294).

12. *Gaffer*, 936 A.2d at 1114 (internal quotation omitted).

13. 48 A.3d 847 (Pa. Super. 2012).

14. *Id.* at 461.; *see also Schoellhammer's Hatboro Manor, Inc. v. Local Joint Executive Board of Philadelphia*, 231 A.2d 160, 164 (Pa. 1967) (declining to compel non-signatory of agreement to submit to arbitration because "arbitration, as a matter of contract, should not be compelled of a party unless such party, by contract, has agreed to such arbitration").

rights,"[15] and therefore, wrongful death actions are the claims of the decedent's heirs.[16] To find otherwise would operate against the principles of Pennsylvania contract law and the FAA.[17] Therefore, the court held that the non-signatory wrongful death claimants were not bound by decedents' contracts and the claims should remain before the court.

This case has significant factual differences from *Pisano*. In this case, Ms. Lipshutz, who signed the arbitration agreement, is a party. Unlike *Pisano*, this case presents both wrongful death and survival claims, and therefore implicates Pa. R. C. P. 213(e). Rule 213 (e) says: "A cause of action for wrongful death of a decedent and a cause of action for injuries of the decedent which survives his or her death may be enforced in one action, but if independent actions are commenced they shall be consolidated for trial." This Rule requires that wrongful death and survival claims be litigated together. In light these considerations, as well as Federal Supreme Court precedent regarding the enforceability of arbitration agreements, this court must decide where the various claims of the individual claimants will be adjudicated.

Since Ms. Lipshulz signed the arbitration agreement in her representative capacity, the survival claims, the claims of decedent before her death which survive her death, must

15. *Pisano*, 2013 Pa. Super. at 7.

16. The Wrongful Death Act permits claims for the damages of the decedent's heirs, namely: the monetary value of services, society, and comfort they would have received from decedent, as well as damages for reasonable hospital, nursing, medical, funeral expenses and expenses of estate administration stemming from the injury. 42 Pa. C.S.A. § 8301.

17. *Pisano*, 2013 Pa. Super. at 9 (quoting *E.E.O.C.*, 534 U.S. at 293) ("Notwithstanding this favorable federal policy towards arbitration agreements, the Federal Arbitration Act does not require parties to arbitrate when they have not agreed to do so).

be remanded to arbitration. The Pennsylvania Rule of Civil Procedure which requires that survival and wrongful death actions be litigated together is intended to conserve judicial resources and preclude inconsistent results such as the duplication of damages.[18] However, were this court to order both the wrongful death and survival actions to remain in court, the decedent's arbitration agreement, valid through her daughter's signature, would be nullified. Such nullification is preempted by the FAA and recent United States Supreme Court interpretations.[19] Both the FAA and Pennsylvania law reflect a liberal policy favoring arbitration. The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any such contract."[20]

The U.S. Supreme Court recently dealt with the exact issue of arbitration agreements in the nursing home context and found that states may not treat these arbitration agreements differently from any other contract. In *Marmet Healthcare Center, Inc. v. Brown*,[21] the U.S. Supreme Court recently ruled that the FAA contains no exception for personal injury or wrongful death claims against nursing homes. The court held that "West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful death claims against nursing homes is a categorical rule prohibiting arbitration

18. Pa. R.C.P. 213(e); *Pezzulli v. D'Ambrosia*, 26 A.2d 659 (Pa. 1942). Although the two actions are distinct, damages of each likely arise from the same fund-the lost earning power of the decedent. *McClinton v. White*, 427 A.2d 218, 221 (Pa. Super. 1981), order vacated on other grounds, 444 A.2d 85 (Pa. 1982).

19. *Marmet Healthcare Center, Inc. v. Brown*, 132 S. Ct. 1201 (2012); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011); *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440 (2006).

20. 9 U.S.C. § 2.

21. 132 S. Ct. 1201 (2012).

of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA."[22]

The Supreme Court has quite narrowly interpreted FAA "grounds for revocation of such contract." In *AT&T Mobility LLC v. Concepcion*, the U.S. Supreme Court held that the FAA preempted a California Supreme Court rule stating that class waivers in consumer arbitration agreements are unconscionable.[23] The court explained that "although § 2's saving clause preserves generally applicable contract defenses, it does not suggest an intent to preserve state-law rules that stand as an obstacle to the accomplishment of FAA objectives."[24] Therefore, preemption by the FAA, as interpreted by the U.S. Supreme Court, precludes the survival action remaining before this court.

This trial court must be guided both by the U.S. Supreme Court decisions and by the valid Pennsylvania Superior Court holdings. The *Pisano* court held that arbitration agreements are not binding on non-signatory beneficiaries. The *Pisano* court relied on the neutral principle of contract law that one who is not a party to a contract cannot be bound by it. Here, Ms. Lipshutz, a plaintiff, signed the arbitration agreement in her capacity as attorney-in-fact for her mother. When she signed the agreement, she bound the decedent and the decedent's survival claims to arbitration. Wrongful death and survival claims are distinct actions with differing parties. Therefore, when Ms. Lipshulz signed the arbitration agreement strictly, and only, in her representative capacity, she did not affect her own right, or the rights of the other beneficiaries, to bring wrongful death claims before this court.

---

22. *Id.* at 1203-04.
23. *AT&T Mobility LLC.*, 131 S. Ct. at 1740.
24. *Id.* at 1743.

Due to FAA preemption, this court must remand the survivor claims to arbitration. Although bifurcation of wrongful death claims from the survival claims runs afoul of the clear import and intent of Pa.R.C.P. 213(e), the main policy considerations underlying this Rule are to prevent the duplication of damages and thus promote judicial economy.[25] However, compensation for loss of earnings is the only significant overlap in damages between the two statutes.[26] Here, there can be virtually no significant claim for lost earnings. Therefore, this concern is insufficient to override shared state and federal policy promoting arbitration. Similarly, an interest in promoting judicial economy is insufficient, standing alone, to override a joint state and federal policy and federal preemption. Thus, the wrongful death claims must remain before this court, and the survival claims are remanded to arbitration.

For the reasons set forth above, defendant's motion is granted in part and denied in part.

## ORDER

And now, this 16th day of October, 2013, upon consideration of the defendant's preliminary objections, and any responses thereto, it is hereby ordered and decreed that the preliminary objections are denied in part and sustained in part. The wrongful death claims must remain before this court, and the survival claims are remanded to binding arbitration pursuant to the arbitration agreement. All other preliminary objections are denied.

---

25. *Pezzulli v. D'Ambrosia*, 26 A.2d at 662. ("There is an important limitation on the right to bring actions under both the death act and survival statute, namely, that it must not work a duplication of damages.").

26. 42 Pa.S.C.A. § 8301; 42 Pa.S.C.A. § 8302.