2016 PA Super 15

| | |
|---|---|
| ROY J. BURKETT JR., ADMINISTRATOR OF THE ESTATE OF NANNIE BURKETT, DECEASED AND IN HIS OWN RIGHT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ST. FRANCIS COUNTRY HOUSE, CATHOLIC HEALTHCARE SERVICES AND ARCHDIOCESE OF PHILADELPHIA | |
| Appellant | No. 2633 EDA 2013 |

Appeal from the Order Dated August 16, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): October Term, 2012, No. 002585

BEFORE: BOWES, J., OTT, J., and STRASSBURGER, J.*

OPINION BY OTT, J.:                                     **FILED JANUARY 25, 2016**

St. Francis Country House, Catholic Healthcare Services and
Archdiocese of Philadelphia (collectively, "St. Francis") appeal from the order
of the Philadelphia County Court of Common Pleas, dated August 16, 2013,
denying St. Francis's motion to compel arbitration of the professional liability
action which was filed against St. Francis by Roy J. Burkett, Jr.,
Administrator of the Estate of Nannie Burkett, deceased, and in his own right
as son (collectively, "Burkett"). St. Francis raises the following three
arguments: (1) the trial court erred as a matter of law in refusing to order

_____

* Retired Senior Judge assigned to the Superior Court.

all of Burkett's claims to arbitration; (2) in the alternative, the court erred in refusing to sever and refer Burkett's Survival Action claims to arbitration (made on behalf of the Decedent's Estate), when the Federal Arbitration Act ("FAA")[1] required it to do so; and (3) the court's reliance on **Pisano v. Extendicare Homes, Inc.**, 77 A.3d 651 (Pa. Super. 2013), *appeal denied*, 86 A.3d 233 (Pa. 2014), *cert. denied*, 134 S. Ct. 2890 (U.S. 2014), is misplaced as that case was improperly decided and should be overturned.[2] Because this Court's recent decision in **Taylor v. Extendicare Health Facilities, Inc.**, 113 A.3d 317 (Pa. Super. 2015), *allocatur granted*, 122 A.3d 1036 (Pa. Sept. 23, 2015), controls this matter, we are constrained to affirm the trial court's order.

The facts and procedural history are as follows. St. Francis owned and operated St. Francis Country House, a nursing home facility where the decedent, Nannie Burkett ("Decedent"), resided at the time of her death. Upon admission to the facility on June 14, 2010, Burkett executed a Nursing Facility Admission Agreement ("Admission Agreement") provided by St. Francis on behalf of Decedent. Pursuant to the Admission Agreement,

---

[1] **See** 9 U.S.C. § 1 *et seq*.

[2] We note St. Francis separated this third issue into two arguments. However, based on the nature of the claims, we have addressed them together.

Burkett was designated as a "Responsible Person." ***See*** Admission Agreement, 6/14/2010. The Admission Agreement contains a mandatory arbitration clause ("Arbitration Clause"), which reads, in pertinent part:

> (b) **Personal Injury or Medical Malpractice**. Unless resolved or settled by mediation, any claim that the Resident may have against the Facility for any personal injuries sustained by the Resident arising from or relating to any alleged medical malpractice, inadequate care, or any other cause or reason while residing in the Facility, shall be settled exclusively by arbitration. This means that the Resident will not be able to file a lawsuit in any court to bring any claims that the Resident may have against the Facility for personal injuries incurred while residing in the Facility. It also means that the Resident is relinquishing or giving up all rights that the Resident may have to a jury trial to litigate any claims for damages or losses allegedly incurred as a result of personal injuries sustained while residing in the Facility.

***Id.*** at ¶19.4(b). Burkett also signed a St. Francis Country House Responsible Person Agreement, indicating he was Decedent's representative. ***See*** St. Francis Country House Responsible Person Agreement, 6/14/2010. Decedent subsequently passed away on November 24, 2010.

On October 18, 2012, Burkett filed a complaint, alleging that while Decedent was a resident at the facility, she sustained serious and permanent injuries, which were directly and proximately caused by the negligence of the facility. The complaint included counts of negligence, vicarious liability, wrongful death, and survival action. St. Francis filed an answer and new matter on February 8, 2013. Seven days later, St. Francis also filed a motion to compel arbitration pursuant to 42 Pa.C.S. § 7304 ("Court

proceedings to compel or stay arbitration"). Burkett responded with an opposition to the motion to compel arbitration, arguing *inter alia*, St. Francis was precluded from relying on the right to arbitrate, as it had failed to properly plead it as an affirmative defense as required by Pennsylvania Rule of Civil Procedure 1030. Oral argument was held on June 6, 2013.

Subsequently, on August 21, 2013, the trial court entered an order denying St. Francis's motion to compel arbitration. St. Francis then filed a motion for reconsideration, which was denied on September 23, 2013. St. Francis filed this timely appeal.[3]

Initially, we begin with two procedural matters. First, Burkett claims St. Francis has waived the right to arbitration because it did not so plead pursuant to Pa.R.C.P. 1030.[4] Rule 1030, with certain exceptions not relevant here, provides: "[A]ll affirmative defenses including but not limited to the defense[] of . . . arbitration and award . . . shall be pleaded in a responsive pleading under the heading 'New Matter[.]'" Pa.R.C.P. 1030(a).

---

[3] The trial court ordered St. Francis to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). St. Francis filed a concise statement on October 9, 2013. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on March 26, 2014.

[4] *See* Burkett's Brief at 5-10. The trial court did not explicitly address this issue in its Rule 1925(a) opinion. Nevertheless, by addressing the substantive claim, we can reasonably infer the court did not find the motion to compel waived for failure to properly plead.

Furthermore, Pa.R.C.P. 1032 requires that, subject to certain exceptions not relevant to the present matter, "[a] party waives all defenses and objections which are not presented either by preliminary objection, answer or reply[.]" Pa.R.C.P. 1032(a). We find that although Burkett is accurate in stating that, generally, a defense of arbitration should be pled as new matter, "our Rules of Civil Procedure must be liberally construed so that actions are resolved in a just, speedy and inexpensive manner consistent with [Pa.R.C.P.] 126." **_Blumenstock v. Gibson_**, 811 A.2d 1029, 1039 (Pa. Super. 2002). Rule 126 provides:

> The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

Pa.R.C.P. 126.

Here, St. Francis did not plead the right to arbitration in its answer and new matter, filed on February 8, 2013. However, within seven days, St. Francis did file a motion to compel arbitration. A review of the docket reveals that with the exception of Burkett's reply to new matter, no other pleadings or motions were exchanged during this time. Therefore, while we find St. Francis's assertion of arbitration was nominally belated and procedurally inaccurate, it did not affect the substantial rights of the parties,

and therefore, the facility did not waive its right to compel arbitration by failing to set forth the assertion in new matter or preliminary objection.

Turning to the second procedural matter, which concerns appealability, we note the following:

> "As a general rule, an order denying a party's preliminary objections is interlocutory and, thus, not appealable as of right. There exists, however, a narrow exception to this oft-stated rule for cases in which the appeal is taken from an order denying a petition to compel arbitration." **Shadduck v. Christopher J. Kaclik, Inc.**, 713 A.2d 635, 636 (Pa. Super. 1998) (citations omitted). **See also** 42 Pa.C.S. § 7320(a)(1) (stating appeal may be taken from court order denying application to compel arbitration); Pa.R.A.P. 311(a)(8) (stating appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from order "which is made appealable by statute or general rule.").

**Elwyn v. DeLuca**, 48 A.3d 457, 460 (Pa. Super. 2012). Accordingly, the present appeal is properly before us.

Based on the nature of St. Francis's first two claims, we will address them together. First, St. Francis contends the trial court erred in denying its motion to compel arbitration because this dispute is governed by the FAA[5] and all of Burkett's claims should be submitted to arbitration based on the following: (1) a valid agreement to arbitrate exists in the Admission Agreement; and (2) all claims made against St. Francis, including those

---

[5] The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any such contract." 9 U.S.C. § 2.

pursuant to the Survival Act[6] and the Wrongful Death Act,[7] fall within the scope of the Arbitration Clause. *See* St. Francis's Brief at 9-13. St. Francis argues the court improperly focused on one aspect of the Arbitration Clause, that it referred to the "Resident" and not to a "third party." *Id.* at 12. Therefore, it claims the court mistakenly concluded Burkett was not a party to or bound by the provision. *Id.* at 12. Further, St. Francis states that "[e]ven if this Court were to conclude that Pennsylvania law does not require such a result, federal law unquestionably does" pursuant to the FAA. *Id.* at 13. Second, St. Francis alleges that regardless of whether the claims Burkett makes on his behalf fall outside of the Arbitration Clause, the FAA requires the survival action be severed from the wrongful death action and referred to arbitration. *Id.* at 14-17.

We are guided by the relevant standard of review:

_____

[6] *See* 42 Pa.C.S. § 8302. Specifically, with respect to the Survival Act claims, St. Francis asserts "the law is clear that claims brought on behalf of an estate are limited to the rights of the decedent, and go no further" and because Decedent "could have brought her personal injury claims while alive, and would have been contractually required to bring them in arbitration, [Burkett] cannot avoid arbitration by bringing those same personal injury claims into court after her death when he does so on behalf of the estate." St. Francis's Brief at 11.

[7] *See* 42 Pa.C.S. § 8301. With regard to the Wrongful Death Act claims, St. Francis asserts those contentions arose out of an indistinguishable set of operative facts and therefore, Burkett is bound by the Arbitration Clause because he is a party to the agreement in his personal capacity as the Responsible Person. *Id.* at 12-13.

We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement.

*Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1270 (Pa. Super. 2004) (citations omitted). With regard to the first element, Burkett does not dispute that he entered into an agreement on the behalf of the Decedent with St. Francis. Therefore, we need not examine whether a valid agreement to arbitrate exists.

With respect to the second element, we note that "[w]hether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary." *Elwyn*, 48 A.3d at 461. Moreover,

[i]n general, only parties to an arbitration agreement are subject to arbitration. *See Cumberland-Perry Area Vocational-Technical School v. Bogar & Bink*, 261 Pa. Super. 350, 396 A.2d 433 (Pa. Super. 1978) (parties cannot be compelled to arbitrate disputes absent agreement to arbitrate). However, a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if that is the parties' intent. *Cf. Highmark Inc. v. Hospital Service Association of Northeastern Pennsylvania*, 2001 PA Super 278, 785 A.2d 93 (Pa. Super. 2001) (third-party beneficiary may enforce arbitration clause even though it is not a signatory to the contract).

- 8 -

*Smay*, 864 A.2d at 1271.  While "the courts of this Commonwealth strongly favor the settlement of disputes by arbitration,"[8] "arbitration agreements are to be strictly construed and such agreement[s] should not be extended by implication."[9]

Here, relying on this Court's decision in *Pisano, supra*, *cert. denied*, 134 S. Ct. 2890 (U.S. 2014), the court concisely found the following:

> The issue before this court was whether the mandatory arbitration clause extended to a third party.
>
> A plain reading of the Agreement and the arbitration *proviso* results in the clear determination that **the Agreement was intended to bind only the resident as to personal injury and medical malpractice actions, and was not intended to extend to any third party such as the plaintiff in this action**.

Trial Court Opinion, 3/26/2014, at 2 (emphasis added).  In applying *Pisano*, the court determined that Burkett, as administrator of the Estate and in his own right, was a non-intended third party, in either capacity.  Moreover, the court concluded Burkett was not bound by the Arbitration Clause to arbitrate either the wrongful death or survival claims.

We find that a closer review of *Pisano* is necessary in considering this matter.  In *Pisano*, a nursing facility appealed from the trial court's order

---

[8] *Smith v. Cumberland Group, Ltd.*, 687 A.2d 1167, 1171 (Pa. Super. 1997).

[9] *Elwyn*, 48 A.3d at 461.

denying its preliminary objections to the trial court's jurisdiction over a **wrongful death suit** by the plaintiff, the son and administrator of the estate of the decedent, based upon the existence of an alternative dispute resolution ("ADR") agreement between the nursing home and the decedent. *Pisano*, 77 A.3d at 653. The nursing home sought to compel arbitration based on the ADR agreement, which the decedent's daughter had signed on his behalf upon his admission to the nursing home. The trial court in *Pisano* overruled the nursing home's preliminary objections, and determined that while "a wrongful death action 'lies in the tortious act which would support a survival action,' [the wrongful death claim] 'is independent of the decedent's estate's rights to an action against the tortfeasor.'" *Id.* at 654 (citation omitted). The issue on appeal was whether the trial court committed "an error of law by refusing to compel arbitration of [plaintiff's] wrongful death action where, under Pennsylvania law, a wrongful death plaintiff's right of action is derivative of, and therefore limited by, the decedent's rights immediately preceding death[.]" *Id.* at 653-654.

After analyzing the nature of wrongful death claims and the definition of "derivative," a panel of this Court concluded the plaintiff's wrongful death claim was not derivative of and defined by the decedent's rights, stating:

> [W]rongful death actions are derivative of decedents' injuries but are not derivative of decedents' rights. This conclusion aligns with the proper use of the term "derivative action" and is consistent with the Supreme Court's pronouncement in

- 10 -

***Kaczorowski*** [***v. Kalkosinsk***, 184 A. 663 (Pa. 1936)], which explained:

> We have announced the principle that the [wrongful death] statutory action is derivative [of the survival action] because it has as its basis the same tortious act which would have supported the injured party's own cause of action. Its derivation, however, is from the tortious act, and not from the person of the deceased, so that it comes to the parties named in the statute free from personal disabilities arising from the relationship of the injured party and tort-feasor.

***Kaczorowski***, 184 A. at 664.

***Pisano***, 77 A.3d at 660. Furthermore, the ***Pisano*** Court determined the plaintiff was not bound under the agreement to arbitrate the wrongful death action, acknowledging the following:

> [The nursing home]'s agreement is between it and Decedent alone. Regardless of [the nursing home]'s intent, Pennsylvania's wrongful death statute … does not characterize [the plaintiff] and other wrongful death claimants as third-party beneficiaries. It is, therefore, clear under relevant contract law that the trial court herein properly refused to compel arbitration. As this Court stated previously, "[T]he existence of an arbitration provision and a liberal policy favoring arbitration does not require the rubber stamping of all disputes as subject to arbitration." ***McNulty v. H&R Block, Inc.***, 2004 PA Super 45, 843 A.2d 1267, 1271 (Pa. Super. 2004). This is especially true where, as here, holding otherwise would operate against principles of Pennsylvania contract law and the FAA. ***Gaffer*** [***Insurance Company, Ltd. v. Discover Reinsurance Company***], 936 A.2d at 1113 (*quoting* ***E.E.O.C.*** [***v. Waffle House, Inc.***, 534 U.S. 279, 293 (2002)]) ("Notwithstanding this favorable federal policy towards arbitration agreements, the Federal Arbitration Act 'does not require parties to arbitrate when they have not agreed to do so.'").

- 11 -

> Furthermore, … compelling arbitration upon individuals who did not waive their right to a jury trial would infringe upon wrongful death claimants' constitutional rights. This right, as preserved in the Seventh Amendment of the United States Constitution, "is enshrined in the Pennsylvania Constitution," and "the constitutional right to a jury trial, as set forth in Pa. Const. art. 1, § 6, does not differentiate between civil cases and criminal cases." ***Bruckshaw v. Frankford Hospital of City of Philadelphia***, 58 A.3d 102, 108-109 (Pa. 2012). Denying wrongful death claimants this right where they did not waive it of their own accord would amount to this Court placing contract law above that of both the United States and Pennsylvania Constitutions. ***Commonwealth v. Gamble***, 62 Pa. 343, 349 (1869) ("But that the legislature must act in subordination to the Constitution needs no argument to prove . . . .").

***Pisano***, 77 A.3d at 661-662. Accordingly, the ***Pisano*** Court held:

> [The] Pennsylvania's wrongful death statute creates an independent action distinct from a survival claim that, although derived from the same tortious conduct, is not derivative of the rights of the decedent. We conclude, therefore, that the trial court did not abuse its discretion in determining that Decedent's contractual agreement with [the nursing home] to arbitrate all claims was not binding on the non-signatory wrongful death claimants.

***Id.*** at 663.

Turning to the present matter, we note there are several factual differences between this case and ***Pisano***. First, in ***Pisano***, the daughter was the one who signed the ADR agreement but she was not a party to the lawsuit. As such, the ***Pisano*** Court's holding focused on non-signatory beneficiaries not being bound by arbitration agreements. Here, Burkett, who signed the Arbitration Agreement, is a party. Furthermore, dissimilar to ***Pisano***, Burkett presented both wrongful death and survival claims.

- 12 -

Nonetheless, **Pisano** is instructive for the principle that wrongful death and survival actions are distinctive claims. Section 8301, which governs wrongful death claims, states:

> An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

42 Pa.C.S. § 8301. Section 8302, which governs survival actions, provides: "All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." 42 Pa.C.S. § 8302.

Likewise, the distinction between the two actions is explained in **Pisano** as follows:

> The survival action has its genesis in the decedent's injury, not his death. The recovery of damages stems from the rights of action possessed by the decedent at the time of death . . . . In contrast, wrongful death is not the deceased's cause of action. An action for wrongful death may be brought only by specified relatives of the decedent to recover damages in their own behalf, and not as beneficiaries of the estate . . . . This action is designed only to deal with the economic effect of the decedent's death upon the specified family members.

**Pisano**, 77 A.3d at 658-659, *quoting* **Moyer v. Rubright**, 651 A.2d 1139, 1141 (Pa. Super. 1994).

As such, survival and wrongful death claims are separate actions with distinct plaintiffs asserting separate rights and a different measure of damages. Accordingly, when Burkett signed the Admission Agreement, which included the Arbitration Clause, strictly and only, in his representative capacity as a "Responsible Person," he did not modify or disrupt his own right, or the rights of other family members and/or beneficiaries to bring a wrongful death claim before the trial court.[10] *See* 42 Pa.C.S. § 8301(b); *see also Lipshutz v. St. Monica Manor*, 33 Pa. D. & C.5th 438, 447 (Pa. C.P. 2013) (Bernstein, J. – Philadelphia County) (signatory claimant was not bound by arbitration agreement because when she signed the document, she was acting only in her representative capacity and therefore, "she did not affect her own right, or the rights of the other beneficiaries, to bring wrongful death claims"), *affirmed*, 120 A.3d 367 (Pa. Super. 2015)

_____

[10] This determination is supported by the language in the Responsible Person Agreement, which provides: "The Responsible Person(s) shall be obligated to fulfill the duties on behalf of the Resident imposed by the Admission Agreement in accordance with the law governing fiduciary duties." *See* St. Francis Country House Responsible Person Agreement, 6/14/2010, at ¶ 2. Moreover, under the terms of the agreement, the Responsible Person was accountable for ensuring the facility received payment from Resident for residence at the home. *Id.* at ¶¶ 3-4. The language in the agreement does not bind third-party beneficiaries of a resident's estate.

(unpublished memorandum).[11]  Therefore, in accordance with **Pisano** and contrary to St. Francis's argument, the trial court did not abuse its discretion in failing to compel arbitration of Burkett's wrongful death claim.[12]

Turning to the survival action, it is implicit in the distinction made by the **Pisano** Court regarding wrongful death and survival claims, that while a wrongful death claim may fall outside the scope of an arbitration clause,[13] a survival action is derivative of and defined by the decedent's rights.  Indeed,

> [i]n the survival action, the decedent's estate sues on behalf of the decedent, upon claims the decedent could have pursued but

---

[11]  We recognize we are not bound by decisions of the Pennsylvania courts of common pleas. **U.S. Bank Nat. Ass'n v. Powers**, 986 A.2d 1231, 1234 (Pa. Super. 2009). However, we find the cogent reasoning of the trial court in the **Lipshutz** case persuasive.

[12]  This case is distinguishable from a recent decision by this Court in **MacPherson v. Magee Mem. Hosp. for Convalescence**, ___ A.3d ___, 2015 PA Super 248 [80 EDA 2013] (Pa. Super. Nov. 25, 2015) (*en banc*). In **MacPherson**, the executor of the estate, as the decedent's brother, did not qualify as a wrongful death beneficiary under Section 8301(b), and therefore, the action was brought solely for the benefit of the estate under Section 8301(d), which provides:  "If no person is eligible to recover damages under subsection (b), the personal representative of the deceased may bring an action to recover damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death."  18 Pa.C.S. § 8301(d).  As such, the executor was determined to be subject to the arbitration agreement.  Here, Burkett, as Decedent's son, does qualify as a wrongful death beneficiary under Section 8301(b) and therefore, is not subject to the arbitration agreement.

[13]  We note that this determination is case-specific and is based on the language of the agreement.

for his or her death. The recovery of damages stems from the rights of action possessed by the decedent at the time of death. In other words, the survival action simply continues, in the decedent's personal representative, the right of action which accrued to the deceased at common law. The measure of damages in a survival action is the decedent's pain and suffering prior to death and loss of gross earning power from the date of injury until death, less the probable cost of maintenance as proved by evidence and any amount awarded for wrongful death.

**Frey v. Pennsylvania Elec. Co.**, 607 A.2d 796, 798 (Pa. Super. 1992) (citations omitted), *appeal denied*, 614 A.2d 1142 (Pa. 1992). Accordingly, in the present matter, the Arbitration Agreement, valid through Burkett's signature, would be rendered a nullity, and in turn, conflict with the FAA. Therefore, one could determine the court did abuse its discretion in failing to compel arbitration of Burkett's survival claims as these assertions fall within the scope of the Arbitration Clause because Burkett, as administrator of Decedent's estate, was suing on behalf of Decedent.

However, as indicated above, we are constrained by the recent decision in **Taylor**, **supra**.[14] The underlying case in **Taylor** involved multiple negligence claims against numerous defendant health care facilities for incidents that occurred and were alleged to have ultimately caused the

---

[14] **Accord Tuomi v. Extendicare, Inc.**, 119 A.3d 1030 (Pa. Super. 2015).

decedent's death.[15]   ***Taylor***, 113 A.3d at 319.   The skilled nursing facility-

defendant contended the following:

> [T]he wrongful death action is derivative of a tort committed during the lifetime of the decedent, and that it is necessarily dependent upon the rights that the decedent possessed immediately prior to death.   It follows then … that since the [d]ecedent agreed to arbitrate any disputes, the [d]ecedent's beneficiaries are limited to claims that [d]ecedent could have pursued during her lifetime and that all claims must be submitted to arbitration.

***Id.*** at 320.

With respect to the wrongful death claim, the ***Taylor*** panel found

***Pisano*** controlled and held "an arbitration agreement signed by the

decedent or his or her authorized representative is not binding upon non-

signatory wrongful death beneficiaries, and they cannot be compelled to

litigate their claims in arbitration." ***Id.*** at 320-321.

With regard to the survival action, the ***Taylor*** panel applied

Pennsylvania Rule of Civil Procedure 213(e), which provides, in relevant

part:  "A cause of action for the wrongful death of a decedent and a cause of

action for the injuries of the decedent which survives his or her death may

be enforced in one action, but if independent actions are commenced they

shall be consolidated for trial."  Pa.R.C.P. 213(e).  Despite the distinctions

_____

[15] The co-executors of the estate filed the lawsuit, which included wrongful death and survival actions.  Based on the opinion, it is unclear how the co-executors were related to the decedent.

recognized in *Pisano* regarding wrongful death and survival claims, the

*Taylor* panel concluded that pursuant to the Rule, the two claims were to be

litigated together.

The panel also found support for consolidation in the final clause of the

Wrongful Death Act, which states: "… and any prior actions for the same

injuries are consolidated with the wrongful death claim so as to avoid a

duplicate recovery." 42 Pa.C.S. § 8301(a); *see Taylor*, 113 A.3d at 322.

Further, the panel determined Rule 213 and the Wrongful Death Act

were not preempted by the FAA.[16] In doing so, the panel rejected the

_____

[16] In *Pisano*, this Court explained federal and state policies regarding arbitration:

> Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the [FAA]. *Gaffer*, 936 A.2d at 1113; 9 U.S.C.A. Ch. 1 §§ 1-16 (West 1990). "[T]he fundamental purpose of the Federal Arbitration Act is to relieve the parties from expensive litigation and 'to help ease the current congestion of court calendars.'" *Joseph Muller Corporation Zurich v. Commonwealth Petrochemicals, Inc.*, 334 F.Supp. 1013, 1019 (S.D. N.Y. 1971) (*quoting* *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 410 (2d Cir. 1959)). Its passage was "'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *Gaffer*, 936 A.2d at 1113 (*quoting* *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).

> This policy, however, was not intended to render arbitration agreements more enforceable than other contracts, and the FAA

*(Footnote Continued Next Page)*

- 18 -

application of the holding in ***Marmet Health Care Ctr., Inc. v. Brown***, 132 S.Ct. 1201 (U.S. 2012), in which the United States Supreme Court determined the FAA pre-empted West Virginia's policy precluding enforcement of pre-dispute arbitration clauses in nursing home cases involving personal injury or death.

The ***Taylor*** panel explained its rationale in deciding ***Marmet*** was not applicable as follows:

> Neither Pa.R.C.P. 213 nor 42 Pa.C.S. § 8301 prohibits the arbitration of wrongful death and survival claims. Thus, the instant case does not mirror the categorical prohibition of arbitration of wrongful death and survival actions that the ***Marmet*** Court viewed as a clear conflict between federal and state law. ***See also e.g.***, ***Preston v. Ferrer***, 552 U.S. 346, 356, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008) (FAA pre-empts

*(Footnote Continued)* ————————

> "had not been designed to preempt all state law related to arbitration." ***Gaffer***, 936 A.2d at 1113-1114 (*citing* ***E.E.O.C. v. Waffle House, Inc.***, 534 U.S. 279, 293-294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002); ***Thibodeau v. Comcast Corp.***, 2006 PA Super 346, 912 A.2d 874, 879-880 (Pa. Super. 2006)). "Rather, when addressing the specific issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration." ***Gaffer***, 936 A.2d at 1114 (internal quotation omitted).

***Pisano***, 77 A.3d at 660-661 (footnotes omitted). "The FAA, however, does preempt state law that categorically prohibits arbitration of particular types of claims, which 'is contrary to the terms and coverage of the FAA.'" ***Pisano***, 77 A.3d 651 at 661 n.7, *quoting* ***Marmet Health Care Center, Inc. v. Brown***, 132 S.Ct. 1201, 1203-1204 (U.S. 2012). Such prohibition is not applicable in the present matter.

- 19 -

state law granting state commissioner exclusive jurisdiction to decide issue the parties agreed to arbitrate); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56, 115 S. Ct. 1212, 131 L. Ed. 2d 76, (1995) (FAA pre-empts state law requiring judicial resolution of claims involving punitive damages); *Perry v. Thomas*, 482 U.S. 483, 491, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987) (FAA pre-empts state-law requirement that litigants be provided a judicial forum for wage disputes); *Southland Corp.* [*v. Keating*, 465 U.S. 1 (1984)] (FAA pre-empts state financial investment statute's prohibition of arbitration of claims brought under that statute).

The rule and statute are neutral regarding arbitration generally, and the arbitration of wrongful death and survival actions specifically. They are not anti-arbitration as was the statute in *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995) (Alabama statute making written, predispute arbitration agreements invalid and unenforceable), nor do they invalidate arbitration agreements under state law contract principles applicable only to arbitration. *See Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686-87, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996) (Montana statute that rendered arbitration agreements unenforceable unless they contained bold notice conflicted with the FAA because such a notice requirement was not applicable to contracts generally).

The statute focuses on the consolidation of wrongful death and survival claims as a means to avoid inconsistent verdicts and duplicative damages in overlapping claims. Rule 213 details how and where such claims will be consolidated. There is nothing in either the statute or rule that precludes wrongful death and survival actions from proceeding together in arbitration when all of the parties, including the wrongful death beneficiaries, agree to arbitrate. In the situation where the decedent or his representative has entered an enforceable agreement to arbitrate, and the wrongful death action is one brought by the personal representative pursuant to 42 Pa.C.S. § 8301(d) for the benefit of the decedent's estate, there would not appear to be any impediment to the consolidation of the actions in arbitration. The statute and rule are evenhanded and designed to promote judicial efficiency and avoid conflicting rulings on common issues of law and fact.

*Taylor*, 113 A.3d at 325. The panel held Rule 213 and the Wrongful Death Act precluded bifurcation, and moreover, the FAA did not pre-empt these state laws.

Lastly, in support of consolidation, the *Taylor* panel pointed to the following:

> The issues are identical in the two actions. Litigation in two forums increases the potential for inconsistent liability findings between the wrongful death and survival actions. Furthermore, the damages overlap. Although lost earnings are generally recoverable in the survival action, they may take the form of lost contributions to the decedent's family, which are wrongful death damages. Lost earnings includes loss of retirement and social security income. Generally, hospital, nursing, and medical expenses are recoverable under either the wrongful death or survival act.

*Id.* at 327 (citations omitted).

As such, we are bound by the *Taylor* decision in this matter that pursuant to Rule 213, the wrongful death and survival actions should be consolidated for trial.

Nevertheless, we do note our hesitation in the matter with respect to *Taylor* as it appears to provide for a bright-line rule regarding consolidation of wrongful death and survival actions in these skilled nursing facility arbitration agreement disputes.

First, it is important to note the United States Supreme Court has recognized and accepted the fact that application of a valid arbitration clause

may produce piecemeal litigation. *See KPMG LLP v. Cocchi*, 132 S.Ct. 23 (U.S. 2011) (*per curiam*), *citing Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985) ("The Act has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation.").

Moreover, fellow Pennsylvania courts have permitted the bifurcation of the two actions. For example, in *Northern Health Facilities v. Batz*, 993 F.Supp.2d 485 (M.D. Pa. 2014), a federal district court found that a piecemeal resolution to survival and wrongful death claims is appropriate where necessary to give effect to arbitration agreements.[17] *See also Lipshutz*, *supra* (common pleas court determined survival claims were subject to arbitration agreement under the FAA; whereas, wrongful death claims remained before the court because the agreement was signed in the

---

[17] The court emphasized: "[T]he United States Supreme Court has held that, when a defendant has two substantive disputes with separate plaintiffs arising from the same incident, and only one of those plaintiffs is subject to an arbitration agreement, then, as a matter of law under the FAA, the two claims must be heard in separate forums." *Batz*, 993 F.Supp.2d at 496 (citation omitted).

We note the *Taylor* panel stated it was "not bound by *Batz*, nor [did the panel] find it persuasive as the court did not discuss Pennsylvania's wrongful death statute, Pa.R.C.P. 213, or the consequences of severing these actions." *Taylor*, 113 A.3d at 327. However, we find *Batz* persuasive and based on its decision, one can infer the *Batz* court determined the FAA does preempt the two state statutes and the consequences do not outweigh the parties' right to arbitrate pursuant to a private contract.

daughter's representative capacity and did not affect her or other beneficiaries' rights to bring wrongful death action before the court); **Golden Gate Nat'l Senior Care, LLC v. Beavens**, __ F.Supp.2d __, 2015 U.S. Dist. LEXIS 110673, 26-27 (E.D. Pa. Aug. 20, 2015) ("Rule 213 is an expression of the Commonwealth's interests in the streamlined resolution of survival and wrongful death claims, but this policy must give way to the FAA's overriding goal to 'ensure judicial enforcement of privately made agreements to arbitrate.' **AT&T Mobility LLC**, 131 S. Ct. at 1749 (*citing* **Dean Witter Reynolds Inc. v. Byrd**, 470 U.S. 213, 219, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)). 'While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage 'was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered.' **Volt Info. Sciences, Inc.** [**v. Bd. of Trustees of Leland Stanford Junior Univ.**, 489 U.S. 468, 478(1989)] (**quoting Dean Witter Reynolds, Inc. v. Byrd**, 470 U.S. 213, 220, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985))."). [18]

---

[18] We note "decisions of the federal district courts . . . are not binding on Pennsylvania courts, even when a federal question is involved." **Kubik v. Route 252, Inc.**, 762 A.2d 1119, 1124 (Pa. Super. 2000) (citation omitted). Nevertheless, these decisions are persuasive authority and helpful in our review of the issue presented.

Likewise, *Taylor* opines the issues in the wrongful death and survival actions are identical. We are compelled to disagree. We would find that generally, claims, which stem from the two actions, are distinct as evidenced by the following:

> In contrast [to a survival action], wrongful death is not the deceased's cause of action.... Wrongful death damages are implemented to compensate the spouse, children, or parents of the deceased for the pecuniary loss they have sustained by the denial of future contributions decedent would have made in his or her lifetime.

*Frey*, 607 A.2d at 798. "As distinguished from the wrongful death statutes, the survival statutes do not create a new cause of action; they simply permit a personal representative to enforce a cause of action which had already accrued to the deceased before his death." *Anthony v. Koppers Co., Inc.*, 436 A.2d 181, 185 (Pa. 1981). Moreover,

> [survival and wrongful death actions] are **entirely dissimilar** in nature. The one represents a cause of action unknown to the common law and is for the benefit of certain enumerated relatives of the person killed by another's negligence.... The other is not a new cause of action at all, but merely continues in his personal representative the right of action which accrued to the deceased at common law because of the tort[.]

*Pezzulli v. D'Ambrosia*, 26 A.2d 659, 661 (Pa. 1942) (emphasis added). As such, the issues raised by the two parties (the estate and the decedent's beneficiaries) are different from one another.

Additionally, with respect to the **Taylor** panel's concern regarding overlapping damages,[19] we find the reasoning in **Lipshutz**, **supra**, persuasive:

> Although bifurcation of wrongful death claims from the survival claims runs afoul of the clear import and intent of Pa.R.C.P. 213(e), the main policy considerations underlying this Rule are to prevent the duplication of damages and thus promote judicial economy.[25] However, compensation for loss of earnings is the only significant overlap in damages between the two statutes.[26] Here, there can be virtually no significant claim for lost earnings. Therefore, this concern is insufficient to override shared state and federal policy promoting arbitration. Similarly, an interest in promoting judicial economy is insufficient, standing alone, to override a joint state and federal policy and Federal preemption.

_____

[19] We note that:

> Damages for wrongful death are the value of the decedent's life to the family, as well as expenses caused to the family by reason of the death. Thus, members of the decedent's family enumerated in the Wrongful Death Act, **see** 42 Pa.C.S. § 8301(b), may recover not only for medical, funeral, and estate administration expenses they incur, but also for the value of his services, including society and comfort.

**Rettger v. UPMC Shadyside**, 991 A.2d 915, 932 (Pa. Super. 2010) (citations and quotation marks omitted). Whereas,

> survival damages are essentially those for pain and suffering endured by the decedent between the time of injury and death. The survival action has its genesis in the decedent's injury, not his death and, as such, the recovery of damages stems from the rights of action possessed by the decedent at the time of death.

**Amato v. Bell & Gossett**, 116 A.3d 607, 625 (Pa. Super. 2015).

[25] **Pezzulli v. D'Ambrosia**, 26 A.2d [659, 662 (Pa. 1942)]. ("There is an important limitation on the right to bring actions under both the death act and survival statute, namely, that it must not work a duplication of damages.").

[26] 42 Pa.S.C.A. § 8301; 42 Pa.S.C.A. § 8302.

**Lipshutz**, 33 Pa. D. & C.5[th] at 448.

The same conclusion can be applied to the present matter where, based on a review of the complaint and allegations,[20] there can be virtually no significant claim for lost earnings. Accordingly, there would be no overriding concern for either judicial economy or promoting arbitration, and the claims could be bifurcated. However, until the Pennsylvania Supreme Court has ruled on the bifurcation question, we are bound by the holding in **Taylor**.[21] Accordingly, we are compelled to conclude the trial court did not abuse its discretion in refusing to sever and refer Burkett's survival action claims to arbitration.

In St. Francis's third argument, it asserts the court's reliance on **Pisano**, **supra**, in finding Burkett was not bound by the Arbitration Clause,

_____

[20] **See** Complaint in Civil Action, 10/18/2012.

[21] **See Marks v. Nationwide Ins. Co.**, 762 A.2d 1098, 1101 (Pa. Super. 2000) (noting that, despite having been granted a petition for allowance of appeal, a decision of a three-judge panel remains precedential until it has been overturned by the Pennsylvania Supreme Court), *appeal denied*, 788 A.2d 381 (Pa. 2001).

is misplaced and if **Pisano** does control, it was incorrectly decided and should be overturned because the ruling "makes it all but impossible to form a pre-dispute agreement to arbitrate a wrongful death claim." St. Francis's Brief at 19. Similarly, in its fourth issue, St. Francis contends that because **Pisano** effectively prohibits the arbitration of wrongful death claims, it creates a disproportionate impact on arbitration agreements. **Id.** at 19-22.

A review of the record reveals St. Francis did not raise these arguments in its Rule 1925(b) statement. Such an omission constitutes waiver. **See** Pa.R.A.P. 1925(b)(4)(vii); **Lance v. Wyeth**, 85 A.3d 434, 462 (Pa. 2014). Therefore, these issues were not preserved for our review. Moreover, to the extent St. Francis asks this Court to overrule **Pisano**, we cannot do so. **See Commonwealth v. Prout**, 814 A.2d 693, 695 n.2 (Pa. Super. 2002) (stating Superior Court is constitutionally bound by prior Superior Court panel decisions). Accordingly, we need not address these claims further.

In conclusion, because we are constrained to find the trial court did not abuse its discretion in denying St. Francis's motion to compel arbitration, we affirm.[22]

_____

[22] It bears remarking that Burkett argues he was not bound by the arbitration agreement based on allegations of unconscionability and lack of consideration. **See** Burkett's Brief 16-29. The trial court did not address

*(Footnote Continued Next Page)*

Order affirmed.  Jurisdiction relinquished.

Judge Strassburger joins the opinion.  Judge Bowes files a concurring statement.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/25/2016</u>

---

*(Footnote Continued)* ──────────────

these issues due to its finding that the claims fell outside of the agreement. Furthermore, there was no evidence presented by the parties with respect to these claims.